ZACHARIAH MACCUBBIN, *el al, vs.* CROMWELL s Ex'rs
*December* 1835.

The statute of Frauds and Perjuries does not provide that trusts shall be con-
stituted by writing; but that they shall be proved by some writing signed
by the party who creates them, and it is not material that the declaration of
the trust be signed at the time of its creation.

So where a deed was absolute on its face, a trust may be engrafted upon it,
provided it can be established *aliunde*, by competent written evidence.

A trust may be manifested and proved to exist, by an answer in Chancery; or
by a letter, note, or memorandum in writing, promising to execute the trust.

The 8th section of the statute of Frauds, excludes from its operation trusts
and confidences, arising or resulting by the implication or construction of
law.

Upon a bill to enforce a trust alleged to have been created at the time of the
execution of a deed, for land absolute in its terms, in relation to property
conveyed by it, the object and design of the trust was admitted by the
defendant in his answer, who denied that he ever accepted the trust. *Held,*
that this was sufficient evidence to establish it.

The duties and liabilities of a trustee, cannot be imposed upon a man without
his assent or against his will; but where one is appointed trustee, (even
against his consent) and, with a knowledge of such appointment, interferes
with the trust property, in such a manner, and to such an extent, as can be
accounted for upon no other ground, than an acceptance of the trust, such
interference will be sufficient proof of his acceptance, and subject him to all
the responsibilities of a trustee, in the same manner as if the office had been
originally expressly accepted.

A deed which purports to have been made and executed, for divers good and
valuable causes and considerations, and also in consideration of the sum of
ten dollars lawful money of the United States to the grantor in hand, paid by
the grantee, is legally operative as a deed of bargain and sale.

Where the trust and confidence reposed in trustees is joint, a separate execu-
tion of it by either trustee, without the participation of the other, and with
his concurrence and consent, is a breach of trust for which he will be held
responsible.

Where one trustee delegates to another interesting and important duties of the
trust, and under such circumstances funds have been wasted, he is held
liable to account to the parties injured.

Where two trustees have united in a receipt for money, and one of them
wishes to escape responsibility, upon the ground that the other trustee in
fact received the money, his allegation, in answer to a bill filed against him
for an account, will not effect that object. There is a presumption in such
case, that the money came to the hands of both, which must be repelled by
proof.

APPEAL from CHANCERY.

The present bill was filed by the appellants against *John Cromwell*, the appellees testator in his life time, and *Philip Laurenson*, ad'r. *de bonis non* of *David Whelan*, on the 28th of October 1828; praying an account of the personal, and of the rents and profits of the real estate of *Zachariah Maccubbin the elder*, the ancestor of the complainants, which came to the hands of the said *Cromwell* and *Whelan*, under, and virtue of a deed to them from the said *Maccubbin*, executed on 15th of November 1809, and that the amount found due upon such account, should be paid to them.

A full statement of the pleadings of the case, is extracted from the opinion of this court as follows:—

The appellants allege, that *Zachariah Maccubbin*, late of *Baltimore* county, deceased, the ancestor of the appellants, being seized in fee simple of a large and valuable real estate situate in *Baltimore* county, and possessed of a large and valuable personal estate, on the 15th of November 1809, made and executed a deed of bargain and sale, of all his estate, both real and personal, to the said *John Cromwell*, and a certain *David Whelan*, (since deceased) for the consideration therein mentioned, which said deed although absolute on its face, was intended to be a deed of trust for the benefit of his children, all of whom except *Sarah*, the wife of *David Whelan*, were then minors—that the said deed was acknowledged and recorded upon the 22d day of the same month, and that the said *Maccubbin* departed this life in the year 1810. The appellants in their bill further allege, that upon the death of the said *Zachariah Maccubbin*, the said *John Cromwell* and *David Whelan*, trustees as aforesaid, entered upon, and took possession of the estate, and property so conveyed to them, both real and personal, and held and enjoyed the same, and the rents and profits thereof, for a considerable time, to wit, for about two years, and that the said *Cromwell*, and *Whelan*, sold the whole of the said personal estate, and a part of the said real estate, to the amount of about $5500, and that the said *Cromwell* and *Whelan*

collected debts due to the said *Zachariah Maccubbin,* to a large amount, as they have been informed and believe to be true, for which the said *Cromwell* and *Whelan* in the life time of the said *Whelan,* and the said *Cromwell* since the death of the said *Whelan* have never accounted. They further allege, that the said *John Cromwell* as surviving trustee as aforesaid, is indebted to them as the *cestui que trusts,* for whose use and benefit the said deed was made in a very large sum of money, for the rents and profits of the said estate, the proceeds of the aforesaid sales, and the amount of collections so made by them as aforesaid. The bill then prays, that the said *John Cromwell,* and *Philip Laurenson,* administrator *de bonis non* of *David Whelan,* may set forth and render, a true and perfect account of all and singular the personal estate of the said *Zachariah Maccubbin,* deceased, and of the rents, issues and profits of his real estate, which came to the hands and possession of them, the said *Cromwell* and *Whelan,* in the life time of the said *Whelan,* and of him the said *Cromwell* since the death of the said *Whelan,* and how, when, in what manner, and for what amount, the same has been disposed of, and what part thereof remains, and where and what amount of debts, were collected by them the said *Cromwell* and *Whelan,* or either or which of them, and that the said *John Cromwell* and *Philip Laurenson* administrator as aforesaid, may pay over to them, what upon such account shall appear to be due, and for general relief.

The defendant *Cromwell* in his answer denies, that he ever accepted said deed, or any interest or estate therein. That he ever took possession of the real estate to the value of one cent, or that he ever directly or indirectly interfered with, controlled, or directed the management thereof, or of any part thereof. He alleges that he never had possession of any part of the personal estate, and that the same was possessed and enjoyed, by the family of the said *Maccubbin* in common. That he never considered himself as having any thing to do with the said estate, but that the same was managed by the said *David Whelan* for the benefit and support of the family.

*Bland* Chancellor, on the 10th of February 1834, decreed an account as against the administrator *de bonis non of Whelan;* but dismissed the bill with costs as to *Cromwell's* executrix, upon the ground, that there was not sufficient evidence, that he had ever assented to the deed, and undertaken to act as trustee.

From this decree, the complainants appealed to the Court of Appeals.

The cause was argued before Buchanan, Ch. J. and Stephen, Archer, Chambers, and Spence, Judges.

Johnson, and J. Scott for the appellants, contended—

1. That the evidence abundantly established the fact of *Cromwell's* participation in the trust.   His concurrence in the advertisement, attending the sale of the property, and joining in conveyances of it, prove this beyond controversy, and render his refusal to do so, when it was first created, of no avail.   *Maccubbin vs. Cromwell*, 2 *Harr. and Gill* 444.   In truth it may well be doubted, when a party is named as trustee in a deed, whether he can discharge himself from the obligations it imposes, by matters *in pais.*   It may in such a case be necessary, that he disclaim by deed, or by proceedings in Chancery, for as the deed creating the trust, is recorded, and thus notice given of it to the public, the act of repudiation, should have equal publicity.   *Maynard vs. Maynard*, 10 *Massa. Rep.* 456.   12 *Massa. Rep.* 461.   *Jackson vs. Dunlap*, 1 *Johns. Cases* 114.   *Wilt vs. Franklin*, 1 *Binney* 502.   *Townson vs. Tickell*, 5 *Serg. and Lowb.* 219.   The deed made them co-trustees, and the refusal of *Cromwell*, if he did refuse, destroyed their powers under it, and consequently the subsequent acts of both, make them trustees for the complainants, independently of the deed.

2. The absence of a written declaration of the trust is not material, no consideration having passed from the grantees, they became trustees for those for whose benefit the deed was made.   2 *Thos. Coke* 699 (*top.*)   The character of the deed

is admitted by the answer, and the defence placed upon an alleged refusal to accept the trust. Not that a trust was not created, but that the defendant is not liable because he refused to act, and consequently the only question is, did he act, or not. As to the extent of the defendants responsibility, that is not now perhaps to be decided. The question now is, should he not be compelled to account, and that he must do, unless the court should consider him wholly absolved from responsibility.

MAYER for the appellee insisted,

1. That *John Cromwell* did not assume the trust as is asserted by the bill. It is true, he joined in certain conveyances, but in doing so, he only did, what a court of Chancery would have compelled him to do. The title had been cast upon him, without his consent, and in executing the deeds therefore, expense was saved the parties concerned. A trust cannot be imposed upon him by an act, which he could not escape doing, and from which no voluntary purpose of assuming the duties of a trustee can be inferred.

2. The evidence shows that *Cromwell* in the first instance, rejected the deed. This stripped him of the character of trustee, which could not afterwards be assumed by an act *in pais*, and especially he could not by such act, become united in that capacity with *Whelan.* A deed to be perfect, requires the assent of the grantee, and must be delivered in the life time of the grantor.

3. That there is no evidence of a trust of any description. Such a character does not necessarily result from a deed voluntarily made and without consideration; and to engraft a trust, in such a case a declaration in writing is necessary. 7 *Bac. Abr. title (Trust)* 92, 125, 138.

4. The deed in the most favorable point of view, creates a resulting use, and consequently, the property devolved upon the family of the grantor precisely as if no conveyances had been executed. Notwithstanding the deed, the property was completely and absolutely the property of the grantor and his

heirs. The grantees had no control over it, and consequently cannot be held responsible for it.

5. If, however, *Cromwell* is to be regarded as a trustee, he cannot be held answerable for the acts of his co-trustee *Whelan.* 2 *Fonb. Eq.* ch. 7, sec. 5. The rule that each trustee shall be liable only for his own acts, has not been disturbed by the case of *Ringgold vs. Ringgold,* 1 *H. and G.* 82, as in that case, the object of the trust principally was investment, which it was the business of both trustees to attend to.

6. The answer is responsive to the bill, and denies all the allegations going to fix on *Cromwell* the character of a trustee, and there is no evidence to overcome it. There being no trust in writing, the answer is conclusive. *Hampton vs. Spencer,* 2 *Vernon* 287, 288. *Cottington vs. Fletcher,* 2 *Atk.* 155. *Ringgold's case,* 1 *H. and G.* 82.

STEPHEN, Judge delivered the opinion of the court.

This is an appeal from so much of the decree of the court of Chancery passed in a cause, wherein the appellants were complainants, and the appellees were defendants, as dismissed the complainants bill against *Urath Cromwell* executrix of *John Cromwell,* deceased.

The Chancellor dismissed the complainants bill as against the defendant *Urath Cromwell,* who, on the death of *John Cromwell,* was appointed his executrix, and made a party to the suit, with costs; on the ground, that there was no sufficient evidence to prove that *John Cromwell* ever assented to the deed, or undertook to act as trustee, as charged in the complainants bill.

There are three questions, which necessarily claim the attention of the court in the decision of this case.

The first relates to the character of the deed, which was executed by *Zachariah Maccubbin* in his life time, and by which he conveyed all his estate, both real and personal, to *John Cromwell* and *David Whelan,* herein before named. The deed upon the face of it, is absolute, and expresses no trust

or confidence of any description. The question then arises, as to the kind of proof, by which the alleged character of the deed can be ascertained and established, that is to say, whether although absolute upon its face, it was not in reality a deed of trust, by which *Cromwell and Whelan* were constituted trustees, and clothed with the fiduciary character, charged by the complainants in their bill, and by what sort of evidence this fiduciary character is to be established, and fixed upon them.

The second relates to the sufficiency of the proof, to charge *Cromwell* with the acceptance of the trust; and the last, to the extent of his responsibilities, if it should satisfactorily appear, that he assumed upon himself, the execution of the trust, with which it was the intention of the deed to invest him.

It must be recollected, that the act, commonly called the statute of frauds and perjuries, does not provide, that trusts shall be constituted by writing; but that they shall be proved by some writing signed by the party who creates them. See *Willis on Trustees*, 10 *Law Library* 21; where it is said, " it is not considered requisite that such trusts should be constituted, but merely that they must be proved by some writing signed by the party who creates them; which as the statute does not specify any time, will be sufficient, though anterior, or posterior in date to the original transaction." It was not necessary then, that the trust in this case should have been declared in the deed, but it will be sufficient, if such trust can be manifested and established *aliunde*, by competent written evidence of its existence. The 7th section of that act provides, " that all declarations or creations of trusts, or confidences, of any lands, tenements or hereditaments, shall be *manifested* or *proved* by some writing, signed by the party, who is by law enabled to declare such trust, or by his last will and testament, or else shall be utterly void, and of none effect." The 8th section excludes from the operation of the statute, trusts and confidences arising or resulting by the implication or construction of law. That a trust may be

manifested and proved to exist, by an answer in Chancery, or by a letter, note, or memorandum in writing, promising to execute the trust. See 10 *Law Library* 21, where the author says—" But as no peculiar form or solemnity is prescribed for the creation or declaration of trusts, and as the disposition of them is guided by courts of Equity, according to the presumed intention of the parties, it is by no means necessary that a declaration of a trust should be by deed; but a trust may be shewn to exist, by a letter, note, or memorandum in writing, promising to execute a declaration of trust, by a bond to perform the trusts of a conveyance, though the trust be not stated in the bond; by an answer in a suit in equity confessing a trust; by a recital in a deed, or by any other written declaration, that a purchase was made with trust money, or the money of another, or by any writing, though without seal or stamp, if it sufficiently indicate an intention that a trust should subsist. Although then, the deed in this case is absolute upon its face, the object and design of it are explicitly and distinctly admitted by the defendant *Cromwell* in his answer, and he only endeavours to shield himself from the responsibilities of a trustee, by denying that he ever accepted the trust, or ever in any manner interfered with the property, mentioned in, or conveyed by the deed in the character of a trustee. Considering the admissions in the answer, sufficient to establish the trust, and prove the object and intention of the deed.

The next question to be considered and decided by this court is, whether, notwithstanding the parol or verbal disclaimer of the trust by *Cromwell*, and his refusal to accept the same, he has so interfered with the trust property, as to make him amenable to the *cestui que trusts*, for any loss or injury which they may have sustained by the waste, improper management, or misapplication of the trust estate. It is true, the duties and liabilities of a trustee cannot be imposed upon a man, without his assent or against his will, but it is equally clear, that where he is appointed a trustee, and with a knowledge of such appointment, interferes with the trust property

in such a manner and to such an extent, as can be accounted for upon no other ground, than an acceptance of the trust, such interference will be sufficient proof of an acceptance, and will subject him to all the responsibilities of a trustee, in the same manner as if the office had been expressly accepted. In the 10th Law. Lib. 18, it is said, "An acceptance, or such a degree of interference with the trust property, as can be construed into an acceptance of the trust, is also necessary to constitute a trustee." Although then Dr. Cromwell, when he was first informed of the existence of the deed, and the object of it, declared verbally to his co-trustee, and to Mr. Winchester (whom he professionally consulted as to the responsibilities arising from an acceptance of the trust) that he would not accept it, and desired his co-trustee to destroy the deed, yet after he found that the deed had been put upon record, and notice had been thereby given to the world of the existence of it, he is found interfering with the management, sale and disposition of the trust property, in a manner which can only be accounted for, by imputing to him an abandonment of his original purpose and intention to decline the trust, and an acceptance of it upon more mature deliberation. This we think is the only construction which can in fairness and propriety be given to his conduct, in the various transactions, in which we find him afterwards engaged. On the 20th February 1810, we find him uniting with David Whelan in a deed to George Smith, by which they conveyed to said Smith in fee simple, a parcel of land, part of the trust property, in which deed, they acknowledge to have received the consideration money, amounting to the sum of $500, and by which, they convey all their estate and title therein and thereto, to the said Smith. This deed was by them respectively acknowledged and recorded according to law; which we think a satisfactory, if not a conclusive recognition by Cromwell of his acceptance of the trust; because it purports to transfer all his estate and interest in the land thereby conveyed, and if he did not consider himself clothed with all the rights and powers of a trustee, it cannot readily be perceived, what estate or

interest in the property he had to convey. After this solemn recognition of his fiduciary character and capacity, after suffering himself to be represented to the world in that character upon the public records of the country, we think he is estopped and precluded to deny his acceptance of the trust ; and that he is strictly chargeable with all the consequences and responsibilities, which would have resulted from an express acceptance of it. If further evidence were necessary to prove his acceptance of the trust, it may be found in the deed, which he executed to *Thomas Whelan* jointly with his co-trustee *David Whelan*, transferring to *Thomas*, a negro girl named *Rachel*, a part also of the trust property, in which they acknowledge jointly to have received the consideration money; and also in the advertizement of the sale of the real and personal estate, signed with the names of *Cromwell* and *Whelan*, at which sale it is in proof *Cromwell* was present, and actively participated in the conduct and management thereof. After this clear and decisive evidence, which we think defies any other construction, than that of his having accepted the trust, we deem it wholly unnecessary to accumulate further proof upon that branch of the subject, and shall now pass to the consideration of an objection, which was adverted to in the argument, as to the legal effect and operation of the deed, by which the trust was created. The deed, upon the face of it, purports to have been made and executed, for divers good, and valuable causes, and considerations, and also in consideration of the sum of ten dollars lawful money of the *United States*, to him in hand paid by the said *Cromwell* and *Whelan*. This consideration, it cannot be denied, was amply sufficient to give legal effect and operation to the deed, as a deed of bargain and sale, and whether the consideration therein mentioned, was paid by *Cromwell* or *Whelan*, is an enquiry not essentially material to its validity, for although it was in the first instance paid by *Whelan*, yet upon the subsequent acceptance of the trust by *Cromwell*, the payment would enure to his benefit, and have the same effect in giving operation to the deed, as if it had been made by *Crom-*

*well* himself. In 1 *Bac. Abrid.* 470, *title " Bargain and Sale,"* we find the principle stated to be, that a payment of the consideration by one of the bargainees, is sufficient to make the land pass to all. He says, " A by deed indented and enrolled, in consideration of one hundred pounds paid by B, bargains and sells lands, to B, C and D, parties to the indenture; in this case the land passeth to all; for although the valuable consideration be expressed to be paid only by one, yet it must be intended that it was paid by all, that the land may pass to all according to the meaning of the parties; and consideration given by one, is sufficient to convey the land to all." In support of this principle, 2 *Inst.* 672, is referred to. The last subject which will engage our attention in the consideration and decision of this case, is the liability of *Cromwell,* under the circumstances and proof in the cause, to a decree to account. In the investigation of this part of the case, it is not necessary to ascertain or to define with precision, the extent of his responsibility in his character of trustee, but simply to ascertain, whether he has so conducted himself in performing the duties of the trust, as to entitle the complainants to call upon him to account. The extent of his liability is not a matter now in question, and upon that subject it is not our intention at present to decide. It is the duty of trustees, faithfully to execute their trusts, according to the terms and conditions of them, and agreeably to the intention of the parties by whom the trusts have been created; and the legal presumption is, that they have so conducted themselves, unless the contrary is fully and satisfactorily evinced. In *Willis on Trustees* to be found in 10 *Law. Lib.* 81, in treating of the responsibility of trustees, it is said, " If in any other manner in the management of the trust property, they be guilty of fraud or negligence, want of caution, misrepresentation, mistake (as where a trustee mistaking his power, sold stock without authority) or concealment, or wilful misconduct, or mis-application, or omit doing what is plainly beneficial for the estate; notwithstanding the utmost latitude be given them for conducting the trust, they will be guilty of a breach of trust,

and a court of Equity will compel *them* to reimburse the *cestui que trust* for any loss he may thereby have sustained." Again, in page 92 of the same book it is said, " where several trustees leave the entire performance of the trust to one co-trustee, they are all equally responsible for duties they have thus dele‐ gated to him." It is not then sufficient to exempt *Dr. Crom‐ well* from all liability as a trustee, if with his concurrence and consent, the duties of the trust have been exclusively per‐ formed by his companion ; on the contrary, according to the above mentioned principle, he must be held accountable for the conduct and management of his co-trustee, to whom he has thought proper thus to delegate his own power, in the same manner, and to the same extent, as if they had been executed by himself.   The trust and confidence reposed was a joint one, and a separate execution of it by either, without the participation of the other, and with his concurrence and consent, was a breach of trust, for which he ought to be held responsible.   The management of the great and interesting matters of the trust, seem to have been left to his co-trustee, although he joined in the advertizement of the greater part of the personal property of *Zachariah Maccubbin*, and partici‐ pated in the sale, yet the notes were permitted to be taken to *Whelan* and the money to be paid to him.   He would then seem to have delegated his most interesting and important duties to his co-trustee, and if under such circumstances, the funds have been wasted, he ought to be held to account.   It has already been remarked, that the extent of *Dr. Cromwell's* liability in his character of trustee, is not now the subject of enquiry ; the only object to which the attention of the court is at present invited, is, to ascertain whether the complainants have established by their proof such a case, as entitles them to a decree to account. · It only remains to remark upon one other transaction, in which *Cromwell* and *Whelan* appear to have been jointly concerned, to prove in the most satisfactory manner their right to such a decree.

· In the deed from *Cromwell* and *Whelan* to *George Smith*, for the land, purchased by *Smith* from *Maccubbin* in his life time,

they jointly acknowledge the receipt of the sum of five hundred dollars, the amount of the consideration money for said purchase. The acknowledgment is at least *prima facie* evidence, that the money was received as stated, and is sufficient to charge *Cromwell,* as well as *Whelan* with the amount, unless he establishes by proof that the money was received by *Whelan* alone; of such fact, there is no proof in the record, save only the general denial of *Cromwell* in his answer, which, it is held, is legally incompetent for such a purpose. In *5th Johns. Chan. Rep.* 294, *Chancellor Kent* says, " The joining in the receipt of the personal property, is presumptive evidence that the money came equally into the possession, or under the control of both the trustees, and it would require direct and positive proof, to rebut that presumption. *Ld. Eldon in Brice vs. Stokes,* 11 *Vesey* 324, declared, that such a presumption arose from the circumstance of joining in the receipt, and that it was incumbent upon the trustee to destroy the presumption by proof, if he meant to exonerate himself. There is no proof in this case, to counteract the language of the receipt. There is no evidence out of the joint answer of the defendants, that the monies did not come to the hands of both of them; and I apprehend, that the answer is no evidence of such a fact set up in avoidance of, and in contradiction to, the language of the receipt by the party himself.

In this case the bill charged the receipt of the monies by both the guardians, and the answer in that respect was strictly responsive to the bill, and yet it was held incompetent to countervail the language of the receipt—so in page 296, of the same book the Chancellor says. " It may be laid down as a principle, that if two guardians or other trustees join in a receipt for monies, it is *prima facie,* though not absolutely conclusive evidence that the money came to the hands of both; that one trustee may show by satisfactory proof, that the joining in the receipt was necessary, or merely formal, and that the monies in fact were paid to his companion; that without such satisfactory proof, he must be liable to the *cestui*

*que trusts ;* and that if the monies were in fact paid to his companion, yet if they were so paid by his act, direction, or agreement, and when he had it in his power to have controlled or secured the money, he is, and ought to be responsible." We think then, that there is sufficient proof in this case, to entitle the complainants to a decree, to account against the executrix of *Dr. Cromwell,* and that the decree of the chancellor dismissing the complainants bill as to her, ought to be reversed with costs in both courts, and the cause sent back for further proceedings.

*Decree reversed accordingly, with costs in both courts.*