(Decided 9th May, 1889.)

LEWIS W. NEAL, and others *vs.* CHARLES T. RATHELL, and others.

*Equity pleading—Multifariousness.*

N. made a deed of real estate to S. who two days afterwards executed a perpetual lease of the land to N. reserving a rent. N. failing to pay the rent, S. brought an action of ejectment against him for the land, and a judgment therein was entered against him. Subsequently S. sold the land to R. who mortgaged it to H. After this a bill was filed by N. and certain parties claiming under a subsequent mortgage of said land to them by N. against R. and H. charging that the transaction between N. and S. was a cover for a loan at usurious interest, and praying that the deed and lease might be construed and declared to be a mortgage; that an account might be stated showing the true amount, if any, due thereon; that N. might have the right to redeem the property on payment of the sum due; and that the complainants other than N. might be declared to have the benefit of their mortgage, and for general relief. On demurrer to this bill for multifariousness, it was HELD:

That the co-complainants of N. were proper parties to the proceeding, and the bill was not multifarious.

APPEAL from the Circuit Court for Talbot County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON and McSHERRY, J.

*William S. Bryan, Jr.,* for the appellants.

In *Miller vs. Baltimore County Marble Co., et al.,* 52 *Md.,* 644, Judge ROBINSON, in speaking for the Court, says: "It will be found upon examination of the many cases in which this subject has been considered, that the objection to bills in equity on the ground of *multifariousness* is confined to three classes:

"1st. Where the bill embraces different persons, as plaintiffs or defendants, who have no privity with each other, as in *Exeter College vs. Rowlan,* 6 *Mad.,* 294, and *Attorney-General vs. Merchant Tailors' Company,* 1 *M. & K.,* 189.

"2d. Where the same party sues or is sued in different capacities, as in *Ward vs. Duke of Northumberland,* 2 *Anst.,* 469, and

"3d. Where the defendant is sued in regard to several distinct matters which have no connection with each other, as in *Attorney-General vs. Goldsmith Company,* 5 *Sim.,* 675."

Surely it cannot be contended that there is no *privity* between the plaintiffs, or as the same requirement is expressed in the succeeding page of the same opinion, (page 645) that they have not all "a common interest" in having the deed construed a mortgage.

In *Kunkel vs. Markell, et al.,* 26 *Md.,* 392, the Court said, (page 409): "We do not think the bill is objectionable on the ground of multifariousness, which was urged by the appellant's counsel in his brief and in the argument. In this case the interests of the several complainants, though distinct and upon distinct conveyances, are yet of a similar nature, against

the same defendants and in relation to the same subject-matter, and the relief prayed is the same to all in character. In such case the objection of multifariousness does not apply. *Story's Equity Pl.*, secs. 285, 286, 531, 533. This case in this respect is similar to that of a creditors' bill in the Maryland practice."

In the leading case of *Brinkerhoff vs. Brown,* 6 *Johns. Ch.*, 139, a number of judgment creditors of the Genesee Manufacturing Company filed a bill for a discovery and to set aside impediments to those remedies at law created by the fraud of their common debtor. The objection that the bill was multifarious was overruled by Chancellor KENT in an able and elaborate opinion. See also *Brian vs. Thomas,* 63 *Md.,* 476; *Story's Equity Pleading, sec.* 285; *Thomas vs. Mason,* 8 *Gill,* 1; *Young vs. Lyons, et al.,* 8 *Gill,* 162.

*Philip Frank Thomas,* for the appellees.

While no general or inflexible rule of universal application can be deduced from the numerous judicial decisions upon the subject of multifariousness, certain general principles have been established by Courts of equity, which will be applied whenever that question is submitted for their decision. *Dunn, et al. vs. Cooper, et al.,* 3 *Md. Ch. Dec.,* 48; *Trego, et al. vs. Skinner,* 42 *Md.,* 432.

Under these general principles, when the alleged multifariousness consists of the joinder of several matters or causes of action in the same bill, to support the objection on that ground, the different matters of suit must be wholly distinct and independent, and each must be sufficient, as stated, to sustain a bill; if they are entirely distinct and unconnected; if they do not arise out of one and the same transaction, or series of transactions, between the same parties, forming one course of dealing, and all tending to one end; if one

connected story cannot be told of the whole, the bill must be treated as multifarious. *Trego, et al. vs. Skinner, et al.,* 42 *Md.,* 432; *Belt vs. Bowie,* 65 *Md.,* 354; *Kunkel vs. Markell,* 26 *Md.,* 409.

The Court will see from the record that the two causes of action joined in the amended bill do not meet these requirements, and this will become more manifest from the character of the relief prayed for in that bill.

All of the complainants ask that the deed and lease between Neal and Sangston may be declared to be a mortgage, and that Neal shall be allowed to redeem the mortgaged premises; but by those who have come in with Neal as co-plaintiffs in the amended bill, no such relief is sought. The relief which they ask for is, *"that they may be declared to have the benefit of the mortgage from Neal to George and others,"* filed as an exhibit in this suit, and admitted to be a junior lien upon the premises conveyed by Neal to Sangston.

Whatever may be the nature or character of the "benefit" thus claimed, is beyond our comprehension.

The mortgage these co-complainants of Neal represent, is wholly separate from, and independent of, the claim of Neal; it will require separate defences and proofs, and, if any relief at all can be afforded, it must be by a different decree from any that can be passed in favor of Neal.

MILLER, J., delivered the opinion of the Court.

The present appeal in this equity cause is simply from a *pro forma* order sustaining a demurrer to the amended bill, and dismissing the same. The only alleged cause of demurrer is multifariousness, and counsel for the appellees have declined to argue any point bearing upon the merits of the controversy. We shall not therefore on this appeal attempt to decide any question save the specific one raised by the demurrer.

From the averments of the original and amended bills, and from the exhibits filed therewith it appears in substance: That Louis W. Neal on the 2d of October, 1871, conveyed by an absolute deed his farm in Talbot County, containing about 654 acres, to Mary E. Sangston for the consideration of $8,000; that two days thereafter (Oct. 4th, 1871,) Mrs. Sangston executed a perpetual lease of the farm to Neal, reserving an annual rent of $720, payable quarterly in advance; that this lease contains, among others, a covenant to the effect that the lessor would at any time during the three months, commencing on the 4th of July, 1874, and ending on the 4th of October of the same year, reconvey the property to the lessee, Neal, upon his paying during that limited period the full sum of $8000 and all arrears of rent then due under the lease; that the deed and lease were both recorded on the same day; that Neal continued to pay the rent for a number of years, but being unable to do so longer, Mrs. Sangston brought an action of ejectment against him for the farm in the Circuit Court for Talbot County, and a judgment therein was entered against him; that Mrs. Sangston, subsequently, on the 8th of August, 1878, sold and conveyed the farm in fee for $10,000 to Charles Rathell, who afterwards mortgaged it to Miss Martha W. Hughlett; that Rathell has since died intestate, and his widow, heirs-at-law, and administrators are the defendants to the original bill, and they with Miss Hughlett are the defendants to the amended bill.

The original bill was filed on the 3rd of June, 1886, by Neal alone, and charges substantially that the transaction between Mrs. Sangston and himself, which took the form of an absolute deed and lease, was simply a cover for a loan of $8000 at the usurious interest of nine per cent.; that Rathell purchased the property and took his deed with knowledge that this transac-

tion was, in truth and fact, a *mortgage* at usurious interest; that he has the right to have it so treated with the consequent right to redeem the property, and to have an account stated showing the amount actually due under this mortgage, after eliminating the usury. The relief prayed accordingly is, 1st, that this deed and lease may be construed as an usurious mortgage; 2nd, that the same may be purged of its usury; 3rd, that an account may be stated, showing the true amount due upon this loan, and 4th, that the complainant may have a day in which to redeem the property, and in default of such redemption that the property be sold and the defendants' lien paid off, if on statement of the account anything shall be found due them.

Nothing further was done in the case, so far as the record shows, for more than two years, until the 11th of August, 1888, when the Court passed an order granting leave to the complainant to amend his bill, and on the 13th of the same month the amended bill was filed by Neal and several other parties who claim under a mortgage of this same farm, executed to them by Neal, *on the 18th of November*, 1871, to secure certain notes on which the mortgagees had become security for him. In this bill the averments of the original bill are repeated in regard to the transaction between Neal and Mrs. Sangston, and there is, substantially, the same prayer for relief so far as Neal is concerned. The only other averments that need now be stated are those averring the execution of the mortgage of the 18th of November, 1871, by Neal to the other complainants, the number and amount of the notes thereby secured, which of them have been paid, and the amount still due, and that Neal has no other property except this farm out of which the claims of these other complainants can be realized. It is averred by all of them, including Neal, that they are entitled to have the trans-

action between Neal and Mrs. Sangston construed and declared to be a mortgage, and that Neal has the right to redeem the property therefrom, and to have an account of the rents and profits to show the true amount, if any, still due on such mortgage. The other complainants aver that they are entitled to the benefit of the mortgage of the 18th of November, 1871, as a *second lien* on this farm, and to the aid of the Court in enforcing the same by the redemption of the property by Neal, or by a sale thereof. The prayer is that the transaction between Neal and Mrs. Sangston may be construed and declared to be a mortgage, that an account may be stated showing the true amount, if any, due thereon; that Neal may have the right to redeem the property on payment of the sum due, and that the complainants other than Neal may be declared to have the benefit of their mortgage of the 18th of November, 1871, and for general relief.

Is this bill multifarious? While there are some general rules applicable to this subject, all the authorities concede that much must be left to the discretion of the Court in particular cases. *Brian, et al. vs. Thomas,* 63 *Md.,* 480. In the present case it is manifest that all the complainants have a common interest in having the deed and lease between Neal and Mrs. Sangston, declared a mortgage and purged of usury. This is the common point of attack which all the defendants have a common interest in resisting. Should the complainants fail in this they will all be out of Court, and their bills dismissed. On the other hand, if they succeed in this, all parties, plaintiffs and defendants, will be interested in the statement of the account, showing what is lawfully due on the mortgage, and ascertaining the amount which Neal will have to pay in order to redeem, if he elects to adopt that course. Again, if there is no redemption, and it becomes necessary to sell the farm

for the payment of the amount thus ascertained, it will be important for the interest of all parties that every one having a lien on the property should be parties to the proceeding, in order that the purchaser, may get a clear title, and the farm be so brought into the market as to bring the highest possible price, for the benefit of all interested. It has been suggested that the proceedings may result in two separate decrees,—one against the defendants, the other as between Neal and his co-complainants, in the latter of which the defendants will have no interest whatever. Inasmuch, however, as Neal has united with his co-plaintiffs in all the averments in regard to their interests, rights and claims under the mortgage of the 18th of November, 1871, it is difficult to perceive how any controversy can arise between them. But, assuming that such will be the result, still a Court of equity has ample power, not only under Equity Rule 33, but independent of that rule, to decree between co-plaintiffs as well as co-defendants. The Court has power to so frame and mould its remedy as to do complete justice to all parties to an equity suit, and, as it has full control over the costs, it will take care that no part of such costs shall be visited upon those who are not interested in the decree or controversy between others. We do not think, therefore, that any injustice will be done to these defendants, even if it should become necessary in the progress of the cause to pass two separate decrees. But however this may be, and whatever may be the result, this amended bill is not multifarious if the additional complainants are proper parties to the proceeding, and we think they are. They occupy a position closely analogous to, if not identical with, that of subsequent mortgagees under a bill by a senior incumbrancer, or of creditors other than the original complainants under a creditors' bill. Of the latter nothing need be said. As to the

former, it is the recognized practice in this State to make junior incumbrancers parties, and this Court has affirmed the doctrine that they are proper, if not necessary parties to such bills. *Leonard vs. Groome, Trustee,* 47 *Md.,* 499. After a careful consideration of the able and elaborate argument of the distinguished counsel for the appellees, we do not think this *pro forma* order can be sustained, and we refer to the decisions of this Court upon the subject. *Kunkel vs. Markell, et al.,* 26 *Md.,* 499; *Miller vs. Balto. County Marble Co., et al.,* 52 *Md.,* 645; *Brian, et al. vs. Thomas,* 63 *Md.,* 476.

*Order reversed, and*
*cause remanded.*

(Decided 9th May, 1889.)