## E. M. BEACHEY et al.

### *vs.*

## AARON F. HEIPLE et al.

*Equity: pleading and practice; action in rem; jurisdiction by
publication; premature objection for want of parties;
multifariousness, what is—. Exhibits: written in-
struments on which equity rests. Trusts: crea-
tion and proof. Statute of Frauds: re-
sulting trusts. Equity and law:
jurisdiction; trusts.
Laches: what
is not—.*

Defendants can not oust the plaintiffs by appearing and de-
murring to the bill, on the ground of the absence of necessary
non-resident parties, before an order of publication against such
parties can be published.                                    p. 694

Where proceedings are *in rem,* and not *in personam,* equity
may acquire jurisdiction by publication against non-resident
defendants.                                                  p. 692

A bill to establish a trust in favor of the complainant is not
demurrable merely because it does not allege the trust to be in
writing.                                                     p. 693

Resulting trusts are not within the jurisdiction of the Statute
of Frauds. But all such trusts must be clearly proven to justify
the Court in granting relief.                                p. 693

An objection to a bill because of multifariousness ought to
apply only where the case of each defendant is entirely distinct
from that of the other defendants.                          p. 690

It is not indispensable that all the parties to a bill should
have an interest in all matters contained in it; it is sufficient
if each party has an interest in some material matters in the
suit, and that they are connected with the others.         p. 691

Where plaintiffs are undertaking to establish a trust in their
favor, equity has jurisdiction, even though a court of law might
have jurisdiction over some of the matters pertaining thereto.
                                                             p. 692

Written instruments upon which the right to equitable relief depends must be filed with the bill; otherwise the bill is demurrable.                                    pp. 693-694

A delay of three years in filing a bill to establish a trust is not fatal, on the ground of laches, when the party against whom relief is sought had disappeared, and the facts had all to be established, and papers searched for, etc.                    p. 694

*Decided June 27th, 1917.*

Appeal from the Circuit Court of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Stuart S. Janney* and *Frank B. Ober,* for the appellants.

*Julius H. Wyman* and *Jacob S. New* (with whom were *James T. O'Neill* and *Duvall & Baldwin* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree sustaining a demurrer to, and dismissing an amended and supplemental bill of complaint, filed by the appellants against the appellees and others. The original bill made the Ajax Consolidated Coal Co., the Mortgage Guarantee Company, Aaron F. Heiple and Harvey M. Berkley, defendants, and the amended and supplemental bill made the State Bank of Maryland, the Walker-Wadsworth Company, A. B. Osgoodby, Mary L. Macmullen and James Connell, defendants, in addition to those in the original bill. Mary L. Macmullen, James Connell, A. B. Osgoodby, the Walker-Wadsworth Company, and the State Bank of Maryland demurred to the amended bill, alleging as reasons for the demurrers: (1) That the plaintiffs had not stated such a case as entitled them to relief; (2) multifariousness and (3) that the Court was without jurisdiction, and the Ajax Company demurred on the ground of multifariousness.

We will state at some length the facts alleged in that bill. The three plaintiffs and Berkley, all of whom were residents of Somerset County, Pa., each contributed $541.67, and purchased coal in lands in that county, subject to a mortgage for $4,233.32, described in a deed dated October 29, 1902, in which Harvey M. Berkley, trustee, was the grantee. The deed was taken in his name "for convenience and other reasons." He was a lawyer of high standing, in whose honesty and integrity the plaintiffs had every confidence, and he attended to the legal details of the transaction. The terms of the trust are alleged to be that Berkley should dispose of the property for the benefit of the four interests and distribute the proceeds in four equal portions to himself and the three plaintiffs, they being equal owners. During the summer of 1913, Berkley, as trustee, with the consent of and acting for the plaintiffs, sold the property to the Ajax Consolidated Coal Company, a corporation of Pennsylvania, whose principal office was in the City of Baltimore. Berkley reported to the plaintiffs that the consideration for the sale was $1800 cash, bonds of the Ajax Company of the par value of $15,000 and a note of that company for $3,100, secured by $5,000 of bonds. The bonds were a part of an issue of the Ajax Company for $250,000, secured by a deed of trust or mortgage to the Mortgage Guarantee Company of Baltimore, as trustee, but the plaintiffs charge that, in addition to the cash, the note and the bonds mentioned, Berkley received and the Ajax Company paid for said property $65,000 bonds of that issue—that being the true consideration received by Berkley and paid by the company. They allege that they did not know of the payment of the $65,000 of bonds until long after the original bill was filed and shortly before the amended bill was filed.

In order to conceal from the plaintiffs the true consideration received and in consummation of the fraud, Berkley conveyed the property to the Ajax Company, Mary L. Macmullen and James Connell, as tenants in common; Mary L. Macmullen, who is a resident of Norfolk, Va., had no interest or part in the property and paid no consideration for it,

but received the conveyance in payment of a pre-existing debt due her or her father's estate by Berkley, although the plaintiffs believe she was innocent of any intention to wrong them; Connell is a resident of Pennsylvania and has no financial or other responsibility, had no interest in the property or the sale, never paid any consideration, but was used as a cloak and sham in order to disguise the real transaction.

The Walker-Wadsworth Company, a corporation of Maryland, was financial agent of the Ajax Company, and was employed by it to buy the property, arrange the terms of payment and to sell the bonds of the Ajax Company; Osgoodby was treasurer and active manager of the Walker-Wadsworth Company, and conducted the negotiations; he collaborated with Berkley, trustee, in order to deprive the plaintiffs of the real consideration for the property, and the deed to Mary L. Macmullen and James Connell was made pursuant to an understanding with the Walker-Wadsworth Company and Osgoodby in order to divert from the plaintiffs their true share in the consideration paid for the property; the true consideration was as stated, which was paid, but the plaintiffs have not received it.

The bonds of the Ajax Company not being engraved at the time of the purchase, temporary certificates called Interim Bond Certificates were issued which were to be surrendered and bonds delivered when the latter were engraved. There was paid to Berkley, trustee, the $1800 cash, the promissory note of $3100, secured by an Interim Bond Certificate for $5,000, and another such certificate for $15,000. A certificate for $22,000 of bonds was delivered to Mary L. Macmullen, and one for $19,000 was ostensibly delivered to Connell, but it was surrendered and the bonds represented by it were delivered to the Walker-Wadsworth Company. A certificate for $24,000 of bonds was made out in the name of the latter company and delivered to Osgoodby, as its representative. All the certificates have been surrendered and the bonds delivered except to Berkley, trustee; Berkley withheld from the plaintiffs all knowledge of the true consideration, but the actual consideration is approved by the plaintiffs and

has been approved and ratified by the Ajax Company. That company has always paid the semi-annual interest on its bonds, except those still on deposit with the Mortgage Guarantee Company, the interest on which it has always expressed a willingness to pay when they are delivered to the true owners; the bonds represented by the two certificates of $5,000 and $15,000 are in the hands of the Mortgage Guarantee Company, but it demands the delivery of the two certificates before surrendering the bonds, to which plaintiffs are entitled.

In August, 1913, Berkley suddenly and mysteriously disappeared and it is not known whether he is living or dead; after his disappearance, Aaron F. Heiple, prothonotary and clerk of the Common Pleas Court of Somerset County, Pa., under the advice of the judge of that Court, took into his custody certain papers that had been in the possession of Berkley, amongst which were the Interim Bond Certificates issued to Berkley and the promissory note referred to. Heiple has filed them with the clerk of the lower Court, and he answered the original bill; by the terms of the trust the certificates should be endorsed by the trustee and the bonds collected from the Mortgage Guarantee Company and distributed to the plaintiffs, but owing to the disappearance of Berkley there is no trustee to make the endorsement and the distribution, the $22,000 of bonds delivered to Mary L. Macmullen have been by her returned or loaned to the Ajax Company and are now on deposit with the State Bank of Maryland, it claiming to hold them as security for some indebtedness of the Ajax Company, but the plaintiffs have no knowledge whether the bank is a *bona fide* holder for value, without notice of the rights of the plaintiffs, and at any rate there is a substantial equity in them; the remaining $43,000 of bonds were received by the Walker-Wadsworth Co., or Osgoodby acting for it, and neither is a *bona fide* holder for value, nor has either paid any consideration therefor, but they were received as part of a preconceived plan to defraud the plaintiffs, and they should be delivered to the trustee to be

appointed in the place of Berkley for distribution, in accord-
ance with the terms of the trust.

The amended bill prays: (1) That a new trustee be ap-
pointed in place of Berkley, with power to execute the trust
reposed in him; (2) that said trustee be authorized to receive
the Interim Bond Certificates and the promissory note out-
standing in the name of Berkley, trustee, and deposited with
the clerk of the lower Court, to make such endorsements, and
execute such instruments and writings as may be necessary,
upon surrender of the certificates, to secure the bonds repre-
sented by them, and that the Mortgage Guarantee Company
be ordered to deliver the said bonds to the trustee; (3) that
the trustee be directed to collect and recover the bonds wrong-
fully delivered to Mary L. Macmullen and now deposited
with the State Bank of Maryland, and that she and the bank
be ordered to deliver them to said trustee free and clear of
any claims by them; (4) that the Walker-Wadsworth Co.
and Osgoodby for said company be ordered and directed to
deliver the $43,000 of bonds received and held by said com-
pany or said Osgoodby to said trustee, free and clear of any
claims of either of them; (5) that said trustee be ordered
to hold all of said bonds and said note until the Court deter-
mines who are entitled to them, and upon said determination
that the trustee deliver them to such person or persons as
the Court may direct; (6) that in the meantime an injunc-
tion issue enjoining the State Bank of Maryland from dis-
posing of, transferring or making delivery to anyone, except
the trustee, of the bonds described in the amended bill, and
that a similar injunction be issued against the Walker-Wads-
worth Company and Alfred B. Osgoodby, as to the bonds in
their possession or control, and (7) for general relief.

We will consider the objections to the bill in the order
stated in the brief of the appellees:

1. *Alleged irregularity of the proceedings.*—On January
22, 1917, the demurrers to an amended bill were sustained,
with leave to file another amended bill. The next day the
Court granted the plaintiffs leave to amend that bill by inter-

lineation. On January 25th an agreement of solicitors was entered into, that the demurrers theretofore filed be considered as refiled to the bill as amended, per order of January 23, 1917, and the same day a motion for hearing was filed. The appellees contend that there was no order of publication against Berkley on the bill as amended by interlineation, and that as he was a necessary party the demurrers were properly sustained. As the demurrers were by the agreement refiled on January 25th, it would be a most novel application of equitable procedure if the defendants who had been summoned and were represented in Court by solicitors could thus object to an amended bill because a non-resident was not then in Court under an order of publication. The decree appealed from was filed on February 13th, long before an order of publication could have expired. If the amendment was such as to require a new order of publication, which we need not, if we could, determine, as the record does not show what it was, those who were still in Court, and especially those who by their solicitors entered into the agreement referred to, had no standing to object to the bill for such reason—their demurrers being filed two days after the interlineation.

2. *Multifariousness.*—As Alfred B. Osgoodby and the Walker-Wadsworth Company are charged with fraudulent conduct in connection with the transaction, which resulted in what the plaintiffs complain of, they were properly joined with Berkley. It might work great injustice to them if they were not made parties, as not only the bonds, but their reputations were involved. If they were guilty of fraud at all, under the bill they were as guilty as Berkley. *Duckett* v. *Bank,* 86 Md. 400; 88 Md. 8; *Safe Deposit Co.* v. *Cahn,* 102 Md. 530. If they were not guilty, they ought to demand rather than avoid an investigation. The Ajax Company was also clearly a proper party. Just how the plaintiffs were deceived by the deed being made to that company and Mary L. Macmullen and James Connell, as tenants in common, is not clear, but as the bill alleges the sale was to the Ajax Company and the deed was made to the three, that, taken in

connection with other allegations in the bill, as to the receipt of bonds and the subsequent disposition of them by Mary L. Macmullen and James Connell, shows they are also proper parties. The Mortgage Guarantee Company is the trustee in the deed of trust, given to secure the bonds. It is not objecting to being made a party, and could not well make a valid objection. On the contrary, it might well have asked to be made a party, if it had not been. Nor is Aaron F. Heiple objecting. He is merely interested in seeing that the papers he found are properly disposed of. Nor do we see any valid objection by the State Bank of Maryland, on this ground. It is true it is only interested in the $22,000 of bonds, so far as the bill discloses, but they were received from a party who had no right to them and whose name at least was connected with the sale made by the alleged fraudulent trustee, and if the plaintiffs sustain their main contention—that they are interested in all of the $80,000 of bonds—then if there is any equity in those bonds held by the bank, it is directly interested in knowing who the real owners are. Of course if it is contended in the proceedings, as the bill indicates may be done, that it is not a *bona fide* holder but had notice of the alleged interest of the plaintiffs, it will be directly interested in the whole matter, to the extent of the bonds held by it, for if the plaintiffs have no interest in the bonds then there will be no question as to whether the bank is a holder for value, without notice of any defect in the title, but if they have such interest, there may be the further question—at least to be contested—as to whether the bank is a *bona fide* holder for value. If there was a separate proceeding for the $22,000 of bonds, the costs necessary to be incurred in undertaking to establish the right of the plaintiffs to the bonds would be as great as they could be in this case.

The objection to a bill on the ground of multifariousness "ought only to apply where the case of each defendant is entirely distinct from that of the other defendants; and it is not indispensable that all the parties should have an interest

in all the matters contained in the bill. It will be sufficient if each party have an interest in some material matters in the suit and that they are connected with the others." *Miller's Eq. Proc.* 139, sec. 110; *Phelps Jurid. Eq.,* sec. 42. "This objection is more frequently overruled than sustained." *Phelps Jurid. Eq.,* sec. 43, or as said in n. 3 of sec. 105 of *Miller's Eq. Proc.* it "is much more often taken than sustained." For cases illustrating the application of the doctrine see *Trego* v. *Skinner,* 42 Md. 426; *Neal* v. *Rathell,* 70 Md. 592; *Regester* v. *Regester,* 104 Md. 359; *Murphy* v. *Penniman,* 105 Md. 452; *Ruhe* v. *Ruhe,* 113 Md. 595; *Roth* v. *Stuerken,* 124 Md. 404. If the bill had been held to be multifarious the plaintiffs might have been put to their election, but the bill would not have been dismissed *in toto. Miller's Eq. Proc.* 114. The Court can amply protect all parties by such decree or decrees as it may pass, as to costs in other matters. What was said by JUDGE MILLER in *Neal* v. *Rathell, supra,* is sufficient as to the suggestion that two decrees may be necessary, to avoid a further discussion of that.

3.   *The alleged contradictory and inconsistent allegations.* —We confess our inability to find such. While the bill refers to the subject several times, it is distinctly and unequivocally alleged throughout that Berkley reported to the plaintiffs that he had sold the property for $1800 cash, a promissory note for $3100 (secured by bonds of $5,000 par value), and bonds of $15,000 par value, while he in reality sold it for the cash and note mentioned and $80,000 in bonds. The statement that the plaintiffs ratified and approved the sale, and that the stockholders and directors of the Ajax Company did also, is in nowise contradictory or inconsistent. If they did not approve or ratify the sale made by the alleged fraudulent trustee, they certainly would not be entitled to recover bonds which were given in part payment therefor. Their suit to recover the bonds, etc., given for the purchase, would probably be all of the ratification necessary, but the allegation can do no harm. The object in saying that the Ajax Com-

pany approved and the stockholders and directors ratified it
was simply to show that the company was not seeking to
avoid the sale by reason of Berkley's fraud. If that had in-
jured the company, and it was not aware of the fraud at the
time, or did not afterwards ratify his action, possibly it could
have declined to carry out the sale. The plaintiffs did not
ratify the fraud of Berkley, or claim in the bill that he did
not sell with their consent, but they complain of his fraud in
not truly representing to them the terms of sale, and giving
himself and others the benefit of part of the purchase price,
to which they were entitled.

4. There can be no possible question about the jurisdic-
tion of a Court of Equity. The plaintiffs are undertaking
to establish that a trust existed in their favor, and the deed
itself shows that Berkley held the property *as trustee.* Even
if a Court of law would have had jurisdiction in some mat-
ters, a Court of Equity, to say the least, certainly has con-
current jurisdiction in cases of fraud, and special jurisdic-
tion in cases of trust. A Court of law could not appoint a
new trustee, or give the plaintiffs all the relief they are en-
titled to, if the facts were as they allege. The Mortgage
Guarantee Company which holds the $15,000 of bonds, to be
delivered on the surrender of the Interim Bond Certificate,
and the $5,000 of bonds as security for the note, is a Mary-
land corporation, the $22,000 of bonds delivered to Mary L.
Macmullen are held by the State Bank of Maryland, and the
$19,000 delivered to Connell were turned over to the Walker-
Wadsworth Company as were the other $43,000 of bonds,
and it and the bank are Maryland corporations. The pro-
ceeding does not involve the title to real estate in Pennsyl-
vania, but bonds which are in Maryland, although secured
on such real estate, and the Ajax Company, although a Penn-
sylvania corporation, has its principal office in Baltimore.
There could be no possible doubt about the right to proceed
by publication against Berkley, trustee, as it is a proceeding
*in rem* and not *in personam.* Many authorities might be
cited to sustain the jurisdiction of a Court of Equity in such
a case as this, but it seems to us that it is only necessary to

recall the facts alleged and the familiar principles of equity procedure and the grounds for relief, as thoroughly established in this State.

5. *Statute of Frauds.*—As to the objection that the statute of frauds precludes the plaintiffs from recovery, one of the cases cited by the appellees as to multifariousness might be cited as an answer to that contention. *Ruhe* v. *Ruhe,* *supra.* But there are several complete answers to the objection as now raised. Section VII of Car. II, Cap. 3, Statute of Frauds, does not provide that the trust shall be constituted by writing, but "all declarations or creations of trusts and confidence, of any lands, tenements or hereditaments shall be manifested and proved by some writing," etc. See *Maccubbin* v. *Cromwell,* 7 G. & J. 157; *Gordon* v. *McCulloh,* 66 Md. 245. "It therefore follows, that a bill need not charge the trust to be in writing, at least it is not demurrable on that account, for the writing is no part of the trust, but only the evidence to prove it at the hearing. *Davies* v. *Otty,* 33 Beav. 540, affirmed on appeal, *ibiden; Forster* v. *Hale,* 3 Ves. Jr. 696; S. C. 5 Ves. Jr. 308." 2 *Alex. Br. Stat.* (Coe's Ed.) 743. In this bill the allegations are ample.

But Section VIII of 29 Car. II, takes resulting trusts out of the statute, and such trusts are not required to be in writing. Without deeming it necessary to cite many of the numerous cases on that subject, we will content ourselves by referring to the excellent volume last referred to on pages 744-746, and to *Dixon* v. *Dixon,* 123 Md. 44, one of the last expressions of this Court on the subject. Of course, all such trusts must be clearly proven to justify the Court in granting relief.

6. *Deed not filed.*—The objection that a copy of the deed from Berkley was not filed was sufficient to prevent an injunction being issued, and we think it should have been filed in order to justify relief other than the injunction prayed for. In *Chappell* v. *Clark,* 92 Md. 98, it was held error to pass an order requiring a bond to be given by the trustee, as well as granting an injunction before an exhibit was filed,

being contrary to what is now Section 142 of Article 16. The Court was entitled to have the deed before it, as there may be something in it which it would think reflected upon some of the questions involved. We have no means of knowing whether the lower Court sustained the demurrer on that ground alone, although it is not probable that it would have dismissed the bill simply for that reason, and as that is the only defect we find in the bill which made it demurrable, we will remand the cause without affirming or reversing the decree. A copy of the deed can then be filed, and further proceedings taken. We will follow the practise established by this Court when this course is pursued, by letting the costs abide the result of the case.

7. What we have said above is sufficient as to Berkley not now being before the Court. Defendants can not oust plaintiffs by appearing and demurring before an order of publication can be published against a necessary non-resident party.

8. It is said the appellants do not come into Court with clean hands, but there is nothing to show the application of that maxim, excepting statements outside of the record.

9. *Limitations and Laches.*—Nor do we think that the appellants' claim is barred by limitations or laches. The original bill was filed December 17, 1915, and in the amended bill it is distinctly alleged that the plaintiffs were not aware of the real transaction until long after the original bill was filed, and shortly before the amended bill was filed, which was October 17, 1916. As will be seen, the original bill was filed in less than three years after the sale, and after Berkley disappeared. The plaintiffs could not be expected to proceed at once, as it probably took a considerable time to ascertain the necessary facts—what Berkley had done with the papers, whether he could be located, etc.

*Cause remanded without affirming or reversing the decree; the costs, above and below, to abide the final result.*