·(Decided June 18th, 1896).

---

## MARTHA A. DUTTERA, BY NEXT FRIEND, *vs.* SARAH BABYLON AND OTHERS.

*Transfer of Property by Husband to Wife in Lieu of Dower—Fraud-ulent Conveyance—Rights of Creditors—Single Bill Without Consideration—Effect of Seal in Equity—Cross-Examination.*

Whilst a husband cannot by voluntary conveyances to his wife strip himself of his property to the prejudice of his creditors, a wife to whom transfers are made in lieu of a potential right of dower, and who has relinquished her inchoate dower in other property on the faith of such transfers, is not a mere volunteer.

Where a husband in his lifetime transfers property to his wife and subsequently declares by his will that such transfer is in lieu of dower, she holds the same for a valuable consideration and not as a voluntary conveyance.

Whether the amount thus given is reasonable or not is a question which only a creditor of the husband can raise.

The circumstance that the obligation which an alleged creditor seeks to enforce is under seal, cannot prevent a Court of Equity from inquiring into the real consideration upon which the obligation was based.

Shortly before the marriage of an old man to a second wife, his daughter, the plaintiff, obtained from him a single bill by which he promised to pay her, twelve months after date, the sum of $26,500 expressed to be the amount due her from her mother. Afterwards he and his second wife (the defendant), conveyed voluntarily to the plaintiff and her sons property valued at over $17,000. He left a will by which he declared that he had given to his wife certain real estate and securities in lieu of dower, &c. The plaintiff filed a bill seeking to vacate the transfers so made to the defendant, to the end that the

single bill held by her might be paid out of the proceeds of sale, alleging that such transfers were procured by undue influence and were fraudulent as against the plaintiff as a creditor. *Held*,

1st. That there was no evidence that the defendant had exerted any undue influence over her husband.

2nd. That there was no consideration for the single bill, since there was no evidence that the plaintiff's father had received any property from his first wife, or, if he received any, that he had incurred any obligation to repay the same, or that he supposed at the time of signing the single bill that he was contracting a debt.

3rd. That since plaintiff was not a creditor of her father's estate she was not entitled to question the validity of the transfers made to the defendant.

Where a witness has testified that he wrote a certain paper and that the same was signed and delivered by the obligor, he may be interrogated on cross-examination as to who were present and what was said at the time of the execution of the document.

Appeal from a decree of the Circuit Court for Carroll County (ROBERTS, C. J., JONES and REVELL, JJ.), dismissing the bill of complaint in this case. The single bill referred to in the opinion of the Court reads as follows :

" Twelve months after date, I promise to pay to Martha A. Duttera, or order, the sum of twenty-six thousand five hundred dollars, amount due her from her mother, Anna Barbara Babylon, with interest from date, for value received. Witness my hand and seal, this third day of March, eighteen hundred and eighty-seven.

his

WILLIAM X BABYLON, [Seal].

mark

Witness:     AMOS DUTTERA.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, BOYD and RUSSUM, JJ.

*Harry M. Clabaugh, Attorney-General,* and *George R. Gaither, Jr.,* (with whom was *John M. Roberts* on the brief), for the appellant.

The right of the plaintiff to recover in this suit depends entirely upon the validity of the single bill offered in evidence. The insufficiency of assets and the voluntary char-

acter of the transfers are practically undisputed.    The right of a single creditor to file a creditor's bill has been fully sanctioned by this Honorable Court. · *Christopher's case*, 64 Md. 483.    The principal ground upon which the right of the plaintiff to recover was disputed below, and which was treated at length in the opinion of the learned Court below, is as to the consideration upon which this single bill is based.    The appellant concedes the right of the Court to inquire into the consideration in this proceeding in equity. He contends, however, that the consideration as proven is a valuable and *bona fide* one.    The consideration expressed in the single bill is "amount due her from her mother, Anna Barbara Babylon, with interest from date for value received."    It will be noted that the consideration is not only stated to be the amount due from her mother's estate, but also "for value received."    The instrument is also under seal, which in itself imports the consideration, but the express language "for value received," sanctions any valuable consideration which was given for said obligation. The note being under seal, and thereby implying the consideration, the plaintiff simply proved the execution of the single bill by the testimony of Amos Duttera, the attesting witness.    The defendant objected to the competency of this witness, but it is apparent that he is only a party to this suit in his nominal capacity as executor, and he was also called by the opposite side.    For these reasons it is submitted that he was a competent witness for the purpose of proving the execution of the single bill.    *Whitridge* v. *Whitridge*, 76 Md. 54.

As against this evidence proving the execution of the single bill, and its necessary construction in law and equity as importing the consideration therein expressed, being an instrument *under seal*, the defendant has produced no evidence regarding the character of the consideration for said bill, except the cross-examination of the witness Amos Duttera.    This cross-examination was specially excepted to by the plaintiff prior to the hearing of the case, for the reasons

there stated, " first, because they are not responsive to anything brought out in examination in chief, and second, because they are irrelevant and immaterial." It is difficult to perceive upon what grounds the questions and answers excepted to can be admitted in this case. It is a familiar principle of our Maryland Courts that upon cross-examination the witness can only be asked regarding matters referred to in examination in chief. *Griffith* v. *Diffenderffer*, 50 Md. 469.

It is admitted that under the law of this State in a matter between the husband and his wife, that there would be no consideration for a promise to pay money belonging to the wife, but which had been reduced into possession by the husband, unless there was an express promise on the part of the husband to pay the money to her. Such would be true as between them, but nevertheless it is the well-known policy of our law to restrain the husband's right to secure his wife's property without a promise to pay, whenever a Court of Equity is called upon to intervene, and hence the principle of a " wife's equity " has been ingrafted most firmly upon our law. This principle shows in itself the policy adopted in equity in dealing with the rights of the wife. But this is not the case of a promise made by the husband to the wife. It is a promise made to the daughter by the father for the very express purpose of *making a settlement of any dispute as to what was due to her from her mother's estate.* As between parent and child our Courts have always been most willing to hold any slight consideration of value a sufficient one to sustain a promise made by a parent to a child. There can be no question that for the purposes of family settlements our Courts have allowed considerations to stand as between parent and child, or between other relatives so as to prevent a law suit between them, which would not exist as among strangers. *Williams* v. *Shipley*, 67 Md., 373 ; *Hartle* v. *Stahl*, 27 Md. 169 ; *Haines* v. *Haines*, 6 Md. 435 ; *Stapilton* v. *Stapilton*, 2 Wh. & T., Ldg. Cas. in Equity, sec. 1824.

The better opinion is that a compromise cannot be avoided merely because the parties acted under an erroneous impression of the law, which a more familiar acquaintance with it would have shown to be free from reasonable doubt or difficulty. *Hunt* v. *Rousmanierc*, 1 Peters, 15; *Good* v. *Herr*, 7 Watts and Sergeant, 253; *Trigg* v. *Read*, 5 Humphrey's, 529; 1 *Story's Equity Jurisprudence*, sec. 110, chap. 5, mistake; *Neal* v. *Neal*, 1 Keen, 672; *Heap* v. *Tongc*, 9 Hare, 91.

Applying these principles, is it not clear that this Court should refuse to violate the expressed terms of this family settlement between the father and his daughter, made upon a consideration which he had promised definitely to his deceased wife that he would respect? It would only be according to the principles of equity and morality that a husband who had acquired in the year 1838, at the threshold of his life, the sum of even $5,000 from the property of his wife, and who had been enabled through her frugality and assistance during the period of nearly forty-eight years to amass a fortune of $40,000, and when both husband and wife believed it to be hers, to agree with the only child of that marriage, immediately after her mother's decease, to pay to her that portion of their common property which he was willing to admit and conceded to have been in reality hers. The proof shows moreover that this agreement was only made after some controversy and after the daughter had agreed that she would not press him for payments during his lifetime. It was only upon these terms that he consented. Is not the compromise and settlement most clearly established? It was a claim which both parties considered *bona fide*, and agreed to expressly to make a settlement. Surely in the absence of some well-known principle of law which would prevent it, such a settlement made for the purpose of avoiding trouble, and that they might have no question between them as father and daughter, should be sanctioned by a Court of Equity. Especially should such a construction be a reasonable one, when the

rights of no third party as creditor or in any manner inter-
fered with, and when the only objector is a second wife of
thirty-two years of age, who marries this old man within
less than a year from the death of his first wife, and who
admits that the proposal of marriage was made on the first
visit and accepted on the second ! In the civil law the en-
tire basis of the conjugal relation was the love and affection
which existed between the parties. The business nature of
this relationship must be so apparent from the admitted
facts, that no equity can be inferred in support of her claims
to this property. Moreover, it is a well-known principle of
law that where a promise is made to pay money due by a
party to a third person it can be collected by such third
person. *Tierman* v. *Jackson,* 5 Peters, 597 ; *Barger* v.
*Collins,* 7 Harris & Johnson, 213 ; *Stewart* v. *Rogers,* 19
Md. 114 ; *Allston* v. *Contee,* 4 Harris & Johnson, 351.

*Jas. A. C. Bond* and *D. N. Henning* (with whom was
*E. O. Weant* on the brief ), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

The bill of complaint with which the proceedings in this
case were begun is a creditor's bill, and was filed by Martha
A. Duttera against her step-mother and other defendants,
most of whom are but nominal parties. It seeks to have
vacated, annulled and set aside as fraudulent, and because
procured by the undue influence of a young woman over an
old man, a conveyance of a small parcel of real estate and
sundry assignments of choses in action, which conveyance
and assignments were all made by William Babylon, the
father of the plaintiff, to Sarah Babylon, his second wife, and
now his widow. The bill is founded on an alleged indebted-
ness claimed to have been due by the father in his lifetime
to the daughter, and evidenced by a single bill purporting to
have been executed by William Babylon, payable to the plain-
tiff, for twenty-six thousand and five hundred dollars. This
single bill bears date the third day of March, eighteen hun-

dred and eighty-seven.   It was not signed by Babylon, but
his name was appended to it, and what professes to be his
mark was affixed.   The body of the instrument and the
name of the obligor are in the handwriting of Amos Dut-
tera, the husband of the plaintiff, who signed it as attesting
witness.   On its face it sets forth that the sum of twenty-
six thousand and five hundred dollars is the amount due to
the ·obligee *from her mother*, Anna Barbara Bablyon, de-
ceased, and it bears interest from its date.   William Baby-
lon was an aged man and a widower upwards of seventy-
eight years old when this single-bill professes to have been
given.   He married his first wife, the mother of the plain-
tiff, in eighteen hundred and thirty-eight, and she died in
eighteen hundred and eighty-six.   Less than a year after-
wards, and subsequent to the date of the single-bill, he mar-
ried his second wife, a woman of thirty-two years of age,
-and she is the only real defendant in the pending case.
Before his death, which occurred in eighteen hundred and
ninety-three, he made his will, wherein, after giving to his
wife a small legacy of household furniture, he.declared that
he had already conveyed to her the parcel of real estate
above alluded to and had assigned to her certain mortgages
and given her certain moneys, " in lieu of all dower, rights
or claims which she would otherwise possess in the prop-
erty bequeathed and disposed of by this will."   He then
directed all·his cash to be divided between his daughter and
her two sons, and made the daughter residuary devisee and
legatee.   Prior to the date of this will, but after the date of
the alleged single-bill, he and his second wife, the defend-
ant, Sarah, conveyed by deed as a voluntary gift to one of
the sons of his daughter, a farm of about one hundred and
sixty-nine acres of land, valued at from eight to ten thou-
sand dollars, and in like manner they also conveyed to the
husband of the plaintiff a house and lot valued at six hun-
dred dollars ; and he transferred to the plaintiff bank stock
and a mortgage aggregating in value seventeen hundred and
fifty dollars.   Under the will, something over five thousand

dollars will pass to the daughter and her two sons. The total value of the property which the daughter, her husband and sons received from William Babylon in his lifetime, after his second marriage, and under his will after his death, is nearly eighteen thousand dollars.

The daughter, suing by one of her sons as next friend, now seeks to have the conveyance and the transfers made to the second wife, in lieu of dower, as declared in the will, set aside, to the end that the single-bill for twenty-six thousand five hundred dollars may be paid out of the proceeds of their sale and collection; though thereby the widow who voluntarily parted with her potential dower-right in the farm given to one of the plaintiff's sons and her potential dower-right in the house given to the plaintiff's husband, in total ignorance of the existence of the alleged single-bill, would be stripped of every vestige of interest in William Babylon's estate.

We do not deem it necessary to go into an examination of the facts which throw, to say the least, grave suspicion around the genuineness of the single-bill, because there are other grounds upon which the decree dismissing the bill and denying the relief sought by the plaintiff must be affirmed. The answer denies that this conveyance and these transfers to Sarah Babylon, which are now attacked and assailed were made under the dominion of an undue influence or with an intent to hinder or delay the creditors of William Babylon; and it further denies that they operate to so hinder or delay such creditors. It also denies that the decedent was a debtor of the plaintiff. If, conceding that William Babylon made his mark to the single-bill, it nevertheless appears with sufficient clearness and certainty from the evidence, that there was no consideration to support the obligation, then, as is perfectly obvious, the single-bill does not establish a debt which constitutes the plaintiff a creditor of her father; and if she be not a creditor, she has not, apart from all other objections, a standing in a Court of Equity to impeach the transactions which, as creditor, and only as creditor, she seeks to nullify.

Now, there is not the faintest trace of evidence in the somewhat lengthy record before us to indicate that Sarah Babylon exerted or attempted to exert an undue or forbidden influence over her aged husband. The mere inequality in their ages furnishes of itself, without more, no ground to base even a conjecture of undue influence on when it is remembered, as the testimony shows, that William Babylon was, though feeble in body, a self-willed and rather strong-minded man. This feature of the controversy, in the absence of any evidence bearing upon it, calls for no further comment.

Whilst a husband cannot, by voluntary transfers and conveyances to his wife, lawfully strip himself of his property to the prejudice of his creditors, a wife to whom transfers are made in lieu of a potential right of dower, and who has relinquished her inchoate dower in other property on the faith of the validity of such transfers, cannot be treated as a mere volunteer entitled to no consideration at the hands of a Court of Equity. Her inchoate right of dower in lands is a substantial and valuable interest which will be protected and preserved to her, though it is not such a right as may be bargained and sold. *Reiff* v. *Horst*, 55 Md. 42. Nevertheless its release by the wife may constitute, even as against the husband's creditors, a valuable consideration for a valid payment to her by him of such a sum as a Court of Equity may, in a given case, deem reasonable. *Reiff* v. *Horst, supra.* And as to personal property, though the husband may lawfully, as against his wife, dispose of it during his life, yet she is so far interested in it that he cannot part with it to her detriment if the transaction be but colorable or be attended by circumstances indicative of fraud upon her rights. *Hays* v. *Henry,* 1 Md. Ch. Dec. 337; *Feigley* v. *Feigley,* 7 Md. 562; *Sanborn* v. *Lang,* 41 Md. 113; *Rabbitt* v. *Gaither,* 67 Md. 94. A widow to whom a bequest is made by her husband in lieu of dower does not take as a donee or volunteer, but as a meritorious purchaser and contractor. *Durham* v. *Rhodes and wife,* 23

Md. 242. Hence, when such a bequest to her is assailed as unjust or injurious to creditors and in fraud of their rights, she will be allowed full satisfaction for her dower. *Hall's case*, 1 Bl. 204; *Gibson* v. *McCormick*, 10 G. & J. 113. The property transferred to the second wife by her husband in his lifetime and declared by his will to be in lieu of dower was as effectively given in lieu of dower as if it had been bequeathed in the first instance by the will. There is nothing *per se* fraudulent in the fact that it was thus given, because she took it, not as a mere volunteer, but, being a meritorious purchaser, she took it for a valuable consideration.

Whether, regard being had to the rights of creditors, the amount thus given in lieu of dower was reasonable or not, is another question, and one which only a creditor can raise. As against the plaintiff if she were not a creditor, William Babylon had the undoubted right to give to his second wife in his lifetime or by his will after his decease, whatever he pleased that belonged to him. This being so, the underlying question in the case recurs : Was the plaintiff in fact a creditor of her father ? There is no pretence apart from the evidence furnished by the single-bill that she was ; and the expressed consideration of the single-bill is disputed and assailed. The fact that the obligation is under seal interposes no objection that a Court of Equity cannot brush aside whenever it becomes necessary to investigate the validity and the good faith of any instrument which, in the exercise of its far-reaching jurisdiction, is properly brought before it. The form of an instrument can never preclude that Court from looking beneath the surface and inquiring into the real consideration, if any there be, for which it was given. This power confessedly existing, the inquiry becomes one largely of fact, and we now turn, for its solution, to the evidence contained in the record.

Amos Duttera, the husband of the plaintiff, who, as we have said, attested the execution of the single-bill, was called by the plaintiff as a witness to prove that William Babylon made his mark to the instrument. He testified at large as

to his having drawn up the paper; as to his having written Babylon's name and as to Babylon having made his mark. He further testified as to attesting the mark and described his delivery of the single-bill to Babylon and Babylon's delivery of it to the witness' wife, the plaintiff. He also gave evidence as to certain endorsements found on the back of the single-bill which purport to be credits of payments thereon. The single-bill having been thus identified by Duttera and having been filed as an exhibit, he was interrogated, on cross-examination, as to who were present and what was said by Babylon at the time the paper was drawn up and signed; but these questions and the answers thereto are excepted to as not competent or admissible, because not properly within the scope of legitimate cross-examination. These exceptions are not tenable. It was competent to inquire, on cross-examination, into the details of the events testified to in chief by the witness, and to develop and unfold the whole transanction about which he had been interrogated but partially. One of the main purposes of a cross-examination is to elicit such parts of a transaction imperfectly or not fully disclosed as may qualify or explain that portion of it which has been given, so that the whole and entire occurrence may be exhibited precisely as it took place. To allow the witness merely to state such facts as tended to support the theory of the party who calls him and then to preclude an inquiry into other events forming part of the same transaction might, and probably would, result in suppressing or stifling, rather than in laying bare, the truth. 1 *Green Ev.*, sec. 446; *Howard* v. *Oppenheimer*, 25 Md. 367; *Griffith* v. *Diffenderfer*, 50 Md. 478. Upon cross-examination the witness testified that just before the single-bill was drawn up, a conversation, which led to its execution, took place between himself, his wife and her father. In this conversation William Babylon spoke about marrying again, whereupon his daughter, the plaintiff, said: "Father, I am surprised at your thinking about getting married so soon after mother's death. The best thing we

can do is to make a settlement." Her father then asked
her what she wanted, and she replied: " Twenty-six thou-
sand dollars from mother and Johnny, and five hundred
dollars for the year Amos and I worked for you and
never received any pay." To which William Babylon
made answer: " I think that's pretty steep, and I have
made up my mind that I would *not give away any of my
estate* during my lifetime." Whereupon the plaintiff said:
" That is not what you promised mother. Give me your
obligation and I will not press the payment of it during
your lifetime." He said: " That is a horse of another
color," and then the single bill was drawn up, and when it
was read to him, Babylon remarked: " Now I can spend
as much money as I please, and be my own master."
When the witness was asked " what was the object in view
in taking this note," he answered: " Just to get what he
promised his wife to give his daughter." And when asked
how the amount of twenty-six thousand dollars was ascer-
tained, he said: " Mrs. Duttera and myself estimated his
property at thirty-nine thousand dollars, and estimated
twenty-six thousand to be two-thirds of that." Now, it is
perfectly obvious that the amount fixed in this single bill
as the amount now claimed by Mrs. Duttera to be due to
her by her father, represented no indebtedness by him to
her at all. A rough estimate of Babylon's worth was evi-
dently made and the obligation was drawn up for two-thirds
of that amount, not because that sum or any other was
really due, but because the daughter and her husband as-
sumed that the daughter would be entitled to that propor-
tion of her father's estate ; and they were both apprehen-
sive that he would marry again, as the testimony just
quoted indicates, and that the second wife might get pos-
session of his property. That Babylon himself never sup-
posed he was contracting a *debt* is apparent from his un-
willingness to sign the paper until he was assured its exe-
cution would not interfere with his disposal of his property
as he pleased. The pretence that the sum named in the

single bill·represented the amount which Babylon had re-
ceived from.his first wife and what he promised *her* to pay
to his daughter is wholly insufficient to constitute a con-
sideration that will support the obligation.   If Babylon
received any money from his first wife, of which averment
there is no evidence but the most vague hearsay, he re-
ceived it long before the Act of 1860 was passed and when,
therefore, he had a right to treat it as his own (*Diggs* v.
*McCullough*, 69 Md. 592); and he either never promised
her to repay it, or, having promised, he never did repay it,
and she died without having received it.   If he promised
his first wife that he would pay the money he received from
her to his daughter, that promise was a mere *nudum pactum*.
In either event there was no money due to the daughter
from her mother, as the single bill on its face asserts.   The
testimony of Duttera utterly explodes the theory of there
ever having been the relation of debtor and creditor be-
tween Babylon and his daughter ; and places her in the atti-
tude of claiming payment of a *debt* where no debt is due.
But there is another aspect of the plaintiff's case that
ought not to be passed by without some comment.  Know-
ing as she did all the circumstances attending the execu-
tion of the single bill and keeping its execution a profound
secret from her stepmother, and being aware that her father
believed he had the perfect right to spend his money and to
do what he pleased with his property notwithstanding she
held the bond, she permitted him to give to herself, her
husband and her sons, in his lifetime, nearly twelve thou-
sand dollars worth of property, in a large part of which
would have been included the dower right of the second
wife had she not united in the deeds, and then, after his
death, whilst holding on to what she thus received, she is
endeavoring to strip his widow of every farthing given to
her in lieu of the very dower' right which the second wife
relinquished to the plaintiff's husband and son.   Such an
attempt does not commend itself to a Court of Equity.

As then, the appellee does not hold without a considera-

tion or in the capacity of a volunteer, the property which she received from her husband ; and as the appellant is not and never was a creditor of her father, the Circuit Court for Carroll County was clearly right in dismissing the bill of complaint and in refusing to grant the relief prayed under it.   This being the conclusion to which we have come, we affirm the decree appealed from.

> *Decree affirmed with costs above and below.*

(Decided June 17th, 1896).