## STATE v. TAYLOR.

[No. 2354.   Dec. 2, 1920.]

### SYLLABUS BY THE COURT.

1. The admission of evidence, technically erroneous, entirely disconnected with either the prosecution or defense, and in no way reflecting on the guilt or innocence of the defendant, is not reversible error.                                        P. 431

2. Where there is any evidence to support or reasonably tending to support the charge, it is not error to deny a motion for a verdict of acquittal.                                 P. 432

3. The verdict of a jury cannot be impeached by the affidavit of jurors.                                                   P. 432

4. An assignment of error not borne out by the record will not be considered.                                            P. 432

5. Where it appears by direct and redirect examination that the witness was present when the homicide was committed, it is reversible error on cross-or recross-examination to confine such examination to facts and events subsequent to the homicide and exclude from the consideration of the jury evidence sought to be elicited in regard to the manner or way in which the homicide occurred.                           P. 433

Appeal from District Court, Lincoln County; Medler, Judge.

James Taylor was convicted of manslaughter, and he appeals. Reversed, and new trial ordered.

SETH F. CREWS, of Oscuro, for appellant.

NICHOLAS D. MEYER, Asst. Atty. Gen., for the State.

OPINION OF THE COURT.

RAYNOLDS, J. The appellant was indicted by the grand jury of Lincoln county for the murder of one Sam Allen, found guilty of manslaughter, and after denial of a motion for a new trial sentenced to not less than eight nor more than ten years in the state penitentiary. From this verdict and sentence this appeal is taken.

The facts, so far as are necessary for the consideration of this case, are as follows: Appellant and deceased owned adjoining homesteads, and the quarrel which culminated in the homicide arose out of an attempt of the deceased to prevent appellant from building a fence. There was evidence of previous threats made by the deceased against the appellant, and a slight conflict as to exactly what occurred prior to and at the time of the homicide, towhich homicide there was one eye witness. Jackson, beside the appellant. The appellant pleaded self-defense.

Appellant assigns errors as follows:

[1] The court erred in admitting the records of entries of the land office to show the boundaries and claims of the deceased and appellant to lands over which the dispute arose, on the ground that such evidence tended to confuse the jury and prejudice the appellant.

As the case developed, this evidence appeared to be immaterial and to have no relation to the theory of the prosecution or the defense. We are of the opinion that its admission was not ground for reversal. As was

stated in State v. Pruett, 22 N. M. 223, at page 228, 160 Pac. 362, at page 364 (L. R. A. 1918A, 656):

"It is not pointed out in the brief of counsel for appellant, however, in what manner this evidence prejudiced the rights of his client. It is a fact in the case standing alone, entirely disconnected from any theory advanced by either the prosecution or defense, and in no way reflected upon the guilt or innocence of the defendant. The admission of the testimony was technically erroneous, but under the circumstances, so long as no injury to the appellant resulted, the judgment should not be reversed."

[2] The court erred in denying the motion of the appellent to instruct a verdict for the appellant at the close of the state's evidence in chief. From the record it is apparent in this case that there was evidence that the appellant was guilty of the crime charged, and it was not error to refuse such instruction.

"The trial court properly refused to give instructions asking that the jury should 'find defendant not guilty,' where there was evidence * * * in the case showing that he was guilty of the crime." Syllabus to Territory v. Padilla, 12 N. M. 1, at pages 8 and 9, 71 Pac. 1084.

"But the case should be submitted to the jury, and the court should not direct a verdict of acquittal, if there is any evidence to support, or reasonably tending to support, the charge, as where it is sufficient to overcome prima facie the presumption of innocence, or where the evidence of a material nature is conflicting." 16 C. J. Cr. Law, par. 2299, and cases cited.

[3] The court erred in denying a new trial on the ground of coercion of the jury as shown by the affidavits of jurors. The rule is established in this jurisdiction that a verdict cannot be impeached by the affidavits of jurors. See Goldenberg v. Law, 17 N. M. 546, at pages 555-557, 131 Pac. 499, where the whole subject is considered and the above rule laid down.

[4] The court erred in refusing to compel the prosecution to put one Jackson, an eyewitness of the homicide, on the witness stand. This assignment is without merit and need not be considered. It is not borne out by the record, which shows that prior to the making of this motion by the appellant in which he sought to compel the prosecution to put the witness Jackson on the witness

stand the prosecution had already called such witness and he had been examined and cross-examined.

[**5**] The appellant excepted to the action of the trial judge in limiting his right to cross-examine one Jackson, an eye witness, who was introduced on behalf of the prosecution. As shown by the record on direct examination, the witness testified in part as follows:

"Q. Were you present on the 26th of September, 1917, when Sam Allen came to his death? A. Yes, sir.

"Q. From the time of his coming to his death, how long did you remain at the body? A. I reckon five minutes. * * *

"Q. Did you come back to where the body was? A. I came back by there. * * *

"Q. Did you observe any changes. A. No, sir; not then * * *

"Q. What difference did you see? A. It looked to me like the muzzle was moved kind of towards the west.

"Q. What was moved to the west? A. The muzzle of the gun in the position it was lying on the ground. * * *

"Q. All the difference you think you saw was a slight movement of the muzzle of the gun? A. Yes, sir."

Cross-examination was confined to the position of the gun and the deceased's body, and redirect examination was on the same subjects. On recross-examination the witness testified as follows:

"Q. When was the first time you saw the revolver? A. As Mr. Allen pulled it out from his bib overalls there.

"Q. What did he do with it when he pulled it out?

"Mr. Renehan: Object as immaterial and improper cross-examination anticipating defense.

"The Court: Objection sustained.

"Q. Where was Allen when he pulled it out of his overalls?

"Mr. Renehan: Object as improper cross-examination.

"The Court: Objection sustained.

"Mr. Renehan: I move to strike out the answer of the witness.

"The Court: Gentlemen of the jury, the last question and answer are not for your consideration.

"Mr. Crews: Exception."

In our opinion to thus limit cross- and recross-examination as it is limited here is reversible error. The witness was asked about the gun, the position of the body, and his presence at the time when deceased came to his death. Any relevant testimony as to these subjects was competent, and the court erred in restricting the evidence to transactions subsequent in time to the homicide, when the witness was present at the homicide and so testified on direct examination. The rule as to cross-examination in this state is:

"As a general rule any matter which tends either to elucidate or to discredit the testimony given by the witness is a proper subject of cross-examination. Accordingly a party has a right upon cross-examination to draw out anything which would tend to contradict, weaken, modify, or explain the evidence given by the witness on his direct examination, or any inference that may result from it tending to support in any degree the opposite side of the case." State v. Roberts, 18 N. M. 480, at page 485, 138 Pac. 208, citing 40 Cyc. 2481, and State v. McGahey, 3 N. D. 293, 55 N. W. 753.

See, also, Kircher v. Laughlin, 6 N. M. 300, at page 310, 28 Pac. 505.

"Any question tending to show that the real import of the testimony of the witness in chief is materially different from its original aspect is within the range of legitimate cross-examination." 40 Cyc. "Witnesses," p. 2483.

In a case note to the case of St. Louis, etc., R. Co. v. Raines, 17 Ann. Cas. 1, at page 18, the author of the note says:

"Cross-examination should always be allowed relative to the details of an event or transaction a portion * * * of which has been testified to on direct examination."

In this case it clearly appears that the state was attempting to interrogate the only eyewitness to the transaction, and to prove by him certain facts damaging to the defendant, and to prevent the witness from testifying to any fact or circumstance that might be beneficial to the defendant. It starts with him at the scene of the homicide and shows that he was present when the killing occurred, and proves by him subsequent events, directly connected, however, with the killing, and which only

served to throw light on the main event.  When the defendant attempted to develop on cross-examination all of the facts known to the witness connected with the main facts which the state was attempting to prove by the witness, viz. facts and circumstances to show that it was a criminal homicide, the witness is halted.  This could not legally be done.

In Duttera v. Babylon, 83 Md. 536, 35 Atl. 64, the court said:

"It was competent to inquire on cross-examination into the details of the events testified to in chief by the witness, and to develop and unfold the whole transaction about which he had been interrogated but partially.  One of the main purposes of a cross-examination, is to elicit such parts of a transaction imperfectly or not fully disclosed as may qualify or explain that portion of it which has been given, so that the whole and entire occurrence may be exhibited precisely as it took place.  To allow the witness merely to state such facts as tended to support the theory of the party who calls him, and then to preclude an inquiry into other events forming part of the same transaction, might, and probably would, result in suppressing or stifling, rather than in laying bare, the truth."

And in Ah Doon v. Smith, 25 Or. 89, 34 Pac. 1093, it was said:

"A party will not be permitted to glean out certain facts from his witness which, without explanation, would give a false coloring to the matter about which he testifies, and then save his witness from the sifting process of a cross-examination by which the real transaction could be shown."

Tested by these rules, it was error for the court to limit and restrict the right of cross-examination of the witness.  The case is therefore reversed, and a new trial ordered.

PARKER, C. J., and ROBERTS, J., concur.