FRANK JAWORSKI, Executor of Bronislawa Wis-
NIEWSKI, Deceased, et al. v. IGNATIUS WIS-
NIEWSKI.

*Descent and Distribution—Husband's Interest in Wife's Estate
—Surrender—Joinder in Conveyance—Effect.*

While the husband has no control over or interest in the
wife's separate estate during her lifetime, nevertheless his right
to receive a part of the estate possessed by her at her death
is substantial and definite and will, unless he release or sur-
render it, be protected against any fraudulent alienation of
her property designed to deprive him of the right, where the
substantial ownership of the property is reserved to her.    p. 115

Where, a husband and wife owning leasehold property as
tenants by the entireties, the husband conveyed his interest
therein to her, the fact that the wife held the property as part
of her sole and separate estate during her lifetime, both under
the deed and under Code, art. 45, section 4, did not bar the
husband's right to his statutory share therein at her death. p. 116

Some affirmative act of the husband is necessary to release
his statutory right in his deceased wife's estate.          p. 117

That a husband joined with his wife in a conveyance to a
third person of leasehold property owned by them as tenants
by the entireties, in order that such person might reconvey to the
wife, did not involve a surrender by him of his marital right
in such property on her death, in the absence of any specific
declaration to that effect.                           pp. 115-117

Where a deed by a wife to another was immediately followed
by a reconveyance from such other to the wife for life, with
remainder to her children by a former husband, the deed however
giving her the same rights to deal with the property as she had
before her conveyance, *held* that the deeds were a fraud upon
the husband's marital right, the testimony showing that they

were executed for the explicit purpose of preventing the husband from receiving any portion of his wife's estate.

pp. 118-120

The presumption of fraud in such case could not be negatived on the theory of an agreement by the husband that the property should belong to the wife and her children, the proof of such agreement being insufficient, and the wife never having parted with the absolute power to dispose of the property as she saw fit.                                            p. 120

That a husband proposed that his wife pay him and take property owned by them as tenants by the entireties, and that she did pay him and he conveyed to her his interest in the property, did not estop him from asserting his marital rights in the property on her death, until which occurrence, more than ten years later, he continued to live with her.          p. 120

*Decided November 6th, 1925.*

Appeal from the Circuit Court No. 2 of Baltimore City (STANTON, J.).

Bill by Ignatius Wisniewski against Frank Jaworski, executor of Bronislawa Wisniewski, deceased, and others. From a decree for plaintiff, defendants appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Clifton S. Brown,* with whom was *John A. Brady* on the brief, for the appellants.

*J. Calvin Carney* and *Marion A. Figinski,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Ignatius Wisniewski and Bronislawa, his wife, on August 8th, 1911, by deed, duly executed and recorded, acquired as tenants by the entireties the leasehold interest in a property described as 1101 S. Kenwood Avenue in the city of Baltimore, subject to an annual ground rent of $31.25. At that

time Mrs. Wisniewski had four children by a former marriage, Andrew, Joseph, Pete and Stanislaus Fiksak.  In 1914, as a result of domestic difficulties, she and her husband appear to have separated for a time, and as an incident of the separation she bought her husband's interests in the Kenwood Avenue property, and in order to transfer it she and her husband joined in a deed assigning it to George C. Wiedersum, who is turn assigned it to her, so that after that the title to it stood in her name alone.  In 1923 she conveyed the property to Isabel T. Brady, who immediately reconveyed it to her.  On November 28th, 1924, she executed in due form a last will and testament, and on the same day she died.

The deed from Isabel T. Brady to her contained this clause:

> "To have and to hold the above described property with its appurtenances unto the proper use of the said Bronislawa Wisniewski for and during the term of her natural life and no longer and with full power and authority to said Bronislawa Wisniewski to sell mortgage lease or in any manner dispose of or encumber the property hereby conveyed or any interest therein, including the absolute estate with the right to dispose of and consume the proceeds of any sale mortgage or lease thereof in such manner as she may desire without any obligation on the part of any purchaser mortgagee or lessee to see to the application of said proceeds and with full power and to the said Bronislawa Wisniewski to dispose of the property above described by her last will as she may deem proper the intention being that said Bronislawa Wisniewski in the exercise of said power shall have the right to convey or will all interest in said property both life estate and remainder and in default of her exercising the said power to sell or will then with remainder over from and immediately after the death of said Bronislawa Wisniewski to James Fiksak, Henry Fiksak, Pete Fiksak and Joseph Fiksak their heirs personal representatives and assigns in equal shares as tenants in

common subject to the payment of the annual rent of
thirty-one dollars and twenty five cents on the first day
of January and July in every year."

On December 16th, 1924, the appellee filed a written re-
nunciation of the provisions made for him in his wife's will,
and on December 26th, 1924, he filed the bill of complaint
in this case against the four sons of his deceased wife and
the executor of her last will, in which he asked (1) that the
Brady deeds be set aside, (2) or, that they and the will of
Mrs. Wisniewski in connection with the appellee's renunci-
ation be construed, (3) that trustees be appointed to sell the
property and distribute the proceeds, and (4) that the de-
fendants be restrained from prosecuting any action to eject
the appellee from the property. The several defendants an-
swered, testimony was taken, and on March 5th, 1925, a
decree was signed setting aside the deed from the decedent
to Isabel T. Brady, and from Isabel T. Brady to her, declar-
ing that Mrs. Wisniewski was possessed of the property at
the time of her death, and that the appellee had the same
interest therein that he had in the other personal property
of the decedent which passed under her will. From that de-
cree the defendants appealed.

The appeal raises three questions: First, had the appel-
lee as the husband of Bronislawa Wisniewski any interest in
the property involved in this proceeding after he had united
in the deed conveying it to Wiedersum in order that he
might convey it to her; second, assuming that he did have
such an interest, was he fraudulently deprived thereof by
the conveyances from Mrs. Wisniewski to Isabel T. Brady
and from her to Mrs. Wisniewski, and third, if he was, is he
estopped by his conduct from asserting that fact in this pro-
ceeding

The evidence material to a consideration of these ques-
tions is uncontradicted and may be briefly stated. Frank
Jaworski, the executor of Mrs. Wisniewski's estate, testified
that at about the time the Brady deeds were executed Mrs.

Wisniewski asked him to place certain monies which she had in the Gibraltar Building Association in her name in trust for herself and Jaworski, subject to the order of both, the balance at the death of either to belong to the survivor, and directed him, upon her death, to pay $200 for "masses and the priest and two hundred dollars for the new church" to "fix" her lot and erect a tombstone, and to divide the balance among three of her sons. That at that time she said that she did not want her husband to have anything, that she "would not give him a straw," and that she "had fixed her property or money that he would not get anything"; that she wanted it to go to her sons; that her sons were sending her money but that her husband was not. He also testified that she and her husband lived together in the Kenwood Avenue house continuously until her death.

John A. Brady, an attorney at law, testified that he drew the deeds conveying her husband's interest in the property to her in 1914. In referring to the circumstances connected with that transaction he said: "The title continued in them until 1914 when there seemed to be a separation between the two people and they came to me and asked me if the property could be put in the wife's name. There was considerable negotiation in reference to the transfer, the husband was holding out for more money and was dickering with his wife the same as he would with a stranger, and the thing was carried on for perhaps four or five weeks and they made four or five visits, I think, to me together, and then each one came singly. At last it was agreed that the wife could have the property transferred to her providing she paid the husband one-half of the purchase price of that property. There had been no change in the market values at that time and I adjusted the matter, figured it right down to even the cost of recording the paper and left the equity in the property to be worth so much money, and she paid her husband one-half the amount of that equity according to the purchase price of the property at that time, and she took the property there subject to the building association mortgage,

which she continued to pay weekly. * * * Mrs. Wisniewski. said—she spoke very broken English—she said: "My man pays nothing, pay no taxes, no water, no ground, pay me no money, no eat, no book. My man no good. My boy is good. My boy pay taxes and my boy pay it, me got house and man got no house." That is the way she talked. He was arrogant at the time. He said, "Go out; I want no more house. You take house, you have boys, you and boy take house and give me my money and I get out." He further testified that the plaintiff, at that time, said: " 'Give me my money out of this house and give the house to you and your boys.' That is not the exact language. It was broken English, but that is what he said."

He also prepared the Brady deeds, and speaking of those transfers he said: "She came to me and said she wanted the property transferred to the boys. I asked her then where the boys were. Two of them were on the ocean. She did not know where they were. And one she had no idea where he was. She did not know whether he was dead or alive. * * * Q. You mean to tell us now when she came to you in 1923 and asked you to draw this deed she did not say anything about her husband and you did not ask her anything about her husband? A. I asked her if her husband was doing any better than what he had been doing, and she says, 'No.' She said, 'Man no good, man no money, did not pay nothing.' " He also testified that the husband was not considered at all, in connection with that transaction; that he, Brady, did not think that the husband had any right in the matter, because the woman was making a gift to her sons.. There was also testimony that Mrs. Wisniewski and her husband often quarreled, that she complained that he did not support her, that on one occasion she had him arrested for non-support, that she herself was a hard-working woman,. that she saved substantial sums from her earnings, and that her savings and what she received from her sons substantially made up the estate of which she was possessed at her death..

In her last will, made just before her death, after be-

queathing $100 to her husband, $200 to her son Stanislaus, and $400 to Rev. Benedict Przenielewski for the use of St. Casimir's Church and for "Holy Masses to be said' for the repose" of her soul, she left all the residue of her property to her three sons, Andrew, Joseph and Pete Fiksak.

Returning to the three questions raised by the appeal, we will consider first the marital rights of the appellee in the Kenwood Avenue property, and the effect of his sale of his interest therein to his wife. As the husband of Bronislawa Wisniewski, he became entitled at her death to one-third of the personal estate then owned by her (C. P. G. L. of Md., article 93, section 126), of which share she could not by will or otherwise deprive him, *Ibid.* 326; *Barroll v. Brice,* 115 Md. 502; *Safe Deposit and Trust Co. v. Gittings,* 103 Md. 495, although she had the power during her lifetime to dispose of her personal estate by sale or gift, as she saw fit, provided that she parted in good faith with the ownership and control thereof. *Brown v. Fidelity Trust Co.,* 126 Md. 184. This right to receive a part of the estate of which his wife was possessed at her death is usually referred to as a marital right (*Willis v. Jones,* 43 Md. 425), and depended upon the appellee's status as the husband of the decedent at the time of her death and upon the statutes of distribution and descent. And while he had no control over or interest in her separate estate during her life time (C. P. G. L. of Md., article 45, section 4), nevertheless his right to receive a part of the estate possessed by her at her death was substantial and definite, and will, unless he released or surrendered it, be protected against any fraudulent alienation of her property designed to deprive him of that right, where the substantial ownership of the property was reserved to her. *Rabbit v. Gaither,* 67 Md. 94; C. P. G. L., article 93, section 326; *Barroll v. Brice,* 115 Md. 502. The question therefore is whether, by uniting in the deed with his wife to Wiedersum, he released or surrendered that right in the Kenwood Avenue property. The deed itself is not before us, but we infer from the references to it found in the record

that it was the ordinary deed of bargain and sale and conveyed whatever interest the grantors had in the property. C. P. G. L. of Md., article 21, section 12. The primary purpose of it was not to release or surrender any marital rights which the appellee had in the property, but to convey his interest therein as a tenant by the entirety, but unless we are to infer that he surrendered all his marital rights in the property from the mere fact that he conveyed to her his interest as a tenant by the entirety therein, there is nothing in the record from which that inference may be drawn. The appellant seeks to draw it from testimony offered to show that the appellee knew that his wife bought the property for herself and her children, and that he surrendered not only the interest he had in it as a tenant by the entireties, but his marital rights as well. But the evidence is in our opinion too vague and unsatisfactory to justify that conclusion. *Willis v. Jones,* 42 Md. 422. While there is some conflict in the authorities as to whether a husband who conveys property to his wife, in the absence of any specific declaration to that effect, surrenders all his marital rights therein, the decided weight of authority is that he does not.

The fact that Mrs. Wisniewski held the property as part of her sole and separate estate during her lifetime, both under the deed, and under the statute (C. P. G. L., art. 45, sec. 4), did not bar her husband's right to his statutory share of her personal estate at her death. *McCarthy v. McCarthy,* 20 App., D. C., 195; 18 C. J. 849; *Mitchell v. Chatanooga Sav. Bank,* 126 Tenn. 669. In the case last cited the court said: "The rights of the wife are the same as to her separate estate, whether that estate come from a third party, be secured to her by marriage contract, or is the gift of her husband. We perceive no sound reason why the rights of the husband in respect to such estate—at least, if it be personalty—should be affected by the source from which it came. There is no more force in the contention that, by a gift of personal property to his wife, the husband parts with his right, upon her death intestate, to take such prop-

erty as husband or administrator, than there would be in a
contention that, by a gift of personal property to his only
child, a father had parted with his right, upon the death of
that child, unmarried and intestate, to take such property
as next of kin." And in *Cooney v. Woodburn,* 33 Md. 320,
where the question before the court was whether a surviving
husband was entitled to personal property which had been
bequeathed to his wife as her sole and separate property,
this court said: "It being conceded that the husband would
be entitled to the property in question if it were not for
the effect attributed to the will of Patrick Cooney, it becomes
purely a question of construction; and as there is nothing
on the face of the will, apart from the usual formula of
declaring the separate estate during coverture, it follows
that the husband's rights, though suspended up to the time
of the death of his wife, have not been entirely defeated.
The will making no disposition of the property on the death
of the wife, and providing only for her exclusive dominion
over it during coverture, 'the right of the husband, as sur-
vivor, is a fixed and stable right, over which the court has
no control, and of which he cannot be divested. The settle-
ment cannot be extended, by construction, beyond the just
and fair import of its provisions; and, clearly, the court
cannot create a settlement, or disposition of property, in
violation of the *jus mariti,* when none has been made by the
party.' So declared Chancellor Kent in *Stewart v. Stewart,*
7 Johns, ch. 229; and the reasoning and principle of con-
struction of that case have been fully sanctioned and ap-
proved by the courts of this State, in *Ward v. Thompson,*
6 G. & J. 357; *Waters v. Tazewell,* 9 Md. 291, and *Jones v.
Brown,* 1 Md. Ch. 191, which cases govern and control this."

Some affirmative act of the husband is necessary to release
his statutory right in his deceased wife's estate. As we
have stated, the record fails to disclose any such act, and
in our opinion the deed to Wiedersum did not have that
effect. If she had acquired the property from a stranger,
and had owned it at the time of her death, her husband's

right to receive one-third of it at her death could not be questioned. And it is not clear how or why any different effect should be given to a similar deed because it was executed by the husband instead of a stranger. In either case she would have acquired the property absolutely, and there is no more reason to hold that the husband's marital rights existed in the one case than in the other. If it had been intended that he should surrender his marital rights in the property at her death, that intention could have readily been expressed either by a separate release, or in the deed to Wiedersum.

It is true that in cases dealing with the effect of a conveyance from a husband to a wife upon his right to curtesy, it has been held that that right was absolutely barred, but the cases are not analogous, because the right of curtesy, strictly speaking, if it exists at all, exists during coverture unless suspended or surrendered, and is inconsistent with the sole and separate estate of the wife; while here the husband's right to an interest in the property did not at all interfere with the wife's use, control, or disposition thereof, so long as she actually and in good faith sold or gave it away. But it has also been held, apparently by the weight of authority, that the husband's curtesy is not barred by a deed of bargain and sale or any conveyance from him to his wife in which there is not an express renunciation of his marital rights. 17 C. J. 424; *Depue v. Miller,* 65 W. Va. 120; 23 L. R. A. (N. S.), 780; 69 L. R. A. 375. But since in our opinion, for the reasons already stated, the appellee was not barred by the sale of his interest in the property to his wife from receiving his statutory interest therein at her death, it becomes unnecessary to determine now the effect of a conveyance of real property from a husband to a wife upon his curtesy therein.

The next question is whether the Brady deeds were a fraud upon that right. The conclusion is inevitable from the testimony that they were executed for the explicit purpose of preventing the appellee from receiving any portion

of his wife's estate. That she had the right to do that by actually selling or giving away her property cannot be questioned. But the conclusion is equally obvious that she never did part with it, sell it or give it away, because under the deed from Isabel T. Brady to her, she had every right, and the same right, to deal with that property that she had before she conveyed it to Isabel T. Brady. Under such circumstances the law is settled that the Brady conveyances were a fraud upon the marital rights of the appellees. The principles upon which that conclusion is founded have been repeatedly stated by this court, but nowhere more clearly than in *Rabbitt v. Gaither,* 67 Md. 104, where Judge Miller, speaking of the right of a husband to dispose of his personal property, said: "The fair conclusion from these authorities is, that a husband may alienate his personal property and his equitable interest in land, either by sale or gift, without the concurrence or assent of his wife, and if the transfer be absolute and unconditional, and without any reservation of interest in, or control over, the property to himself, and if the possession be parted with or delivered in pursuance of the conveyance, it is valid even though his intent and purpose in making it, may have been to deprive his wife of her dower or thirds therein, provided there be no fraudulent participation on the part of the grantee or donee in such intent or purpose. * * * But on the other hand, if the transfer be colorable merely, that is to say, if it be a mere device or contrivance by which the husband does not part with the absolute dominion over the property during his life, but seeks thereby to defeat the claims of his widow at his death, the law pronounces it a fraud upon her rights, and this fraud may be proved and established by his retention of possession, during his life, by a reservation of an interest to himself on the face of the conveyance, or by any outside agreement or arrangement between him and his grantee or donee, to the effect that he shall receive the benefit of, or have control over, the property, during his life, or by any other fraudulent participation on the part of the grantee or donee

to aid him in his purpose of defeating the rights which the law gives to his widow upon his death." What was said there of the husband's property and of the rights of his wife therein applies with equal force under existing statutes to the wife's personal property forming a part of her sole and separate estate and of the rights of her husband therein at her death. While that statement may be regarded as the opinion of Judge Miller, and not clearly that of the court, the principles announced in it have been frequently recognized. *Duttera v. Babylon,* 83 Md. 544; *Collins v. Collins,* 98 Md. 483; *Wright v. Holmes,* 100 Me. 508, 3 L. R. A. (N. S.), 772; *Sanborn v. Lang,* 41 Md. 107; *Dunnock v. Dunnock,* 3 Md. Ch. 140; *Hayes v. Henry,* 1 Md. Ch. 377; and cases collected in 4 *L. R. A. Ex. Ann.,* p. 286.

Applying those principles to the facts of this case, the conclusion is inevitable that the Brady deeds were a fraud upon the marital rights of the appellee. The appellant contends that the presumption of fraud is negatived because the appellee agreed that the property should belong to his wife and children, but there are two objections to that contention, first, that the proof of any such agreement is unsatisfactory and insufficient, and second, that if there had been such an agreement the deeds do not carry it out, because under them the decedent never parted during her life with the absolute and uncontrolled power to dispose of the property as she saw fit.

Nor do we think the appellee was estopped from claiming his marital rights in his wife's estate. He was paid for his one-half interest in the property by his wife, and he transferred that one-half interest to her, and in that conveyance he did nothing more, nor does it appear that he ever agreed to do anything more. Brady, the attorney who drew the deeds, speaking of the appellee, said that after his wife, in the course of what appears to have been an altercation, had charged him with failing to support her, that "he was arrogant at the time. He said, "Go out; I want no more house. You take house, you have boys, you and boy take house and give me my money and I get out." Certainly that language,

and it is all that is to be found in the record relating to the question, can scarcely, under the circumstances, be held to amount either to a contract, nor to estop the appellee from asserting his marital rights when he continued to live thereafter with the decedent until her death, more than ten years later.

For the reasons stated it follows that the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellee.*