ANNA SCHER *v.* JOSEPH W. BECKER.

[No. 55, April Term, 1932.]

200

*Decided June 22nd, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Vernon Cook* and *Avrum K. Rifman,* with whom was *Isaac Lobe Straus* on the brief, for the appellant.

*Randolph Barton, Jr.,* and *H. Mortimer Kremer,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The amended bill of complaint on this record was filed by Anna Scher, surviving widow of Morris M. Scher, against Jacob W. Scher, in his individual capacity and as executor of Morris M. Scher, Joseph W. Becker, Jacob W. Scher and Elizabeth J. Scher, his wife, and Jacob W. Scher, Emil Scher, and Michael Miller, trustees under the will of Morris M. Scher.

The gravamen of the lengthy bill is that Morris M. Scher, a widower, with children, married Anna Scher, who was then a widow with children, on October 11th, 1931, and they lived together until his death on October 16th, 1931; that he was a man of large means and she was poor; and that, after

the wedding day was fixed, the prospective husband began and carried out a systematic and thorough conversion, transfer, or assignment of his real and personal property during the period of their betrothal, so that, by the time of the marriage, he had either disposed of his estate or so converted the residue of it in property that he could assign or grant at will, without the conjunction of his prospective wife after their nuptials. The bill of complaint further alleges that the complainant is an ignorant, illiterate woman of no business experience, knowledge, or capacity, and that shortly before the marriage ceremony Morris M. Scher, in company with Joseph W. Becker, who was his lawyer and nephew, visited the plaintiff, and, by reason of deceitful arts and fraudulent misrepresentations practiced by them upon her, she, then uninformed of the nature and size of her future husband's fortune, and of a wife's marital rights, but having full faith and confidence in her betrothed and relying upon his professions of unselfish devotion to her and without disinterested advice, executed two documents in the belief they were of a merely formal nature and requisite in her intended husband's business to obviate difficulties which might otherwise arise in the transaction of his current business affairs. These documents were carried away in the custody of her husband or his attorney, where they remained until the death of the said husband, when one of said papers was produced, and was found by the complainant to be of an entirely different nature and scope. The estate of the husband is stated to be about $245,000, and the production of the paper mentioned revealed that it was a deed of release and quitclaim, whereby the prospective husband surrendered all rights as surviving husband and the prospective wife surrendered all her rights as surviving wife, except the sum of $5,000, to be paid her if she survived.

In furtherance of the alleged deceit and as a part of the scheme to cheat the future wife of the inchoate marital rights and estate which would ensue the marriage, the defendant Joseph W. Becker, with full knowledge of the wrongful purpose and as an actor in its prosecution, prepared the

two paper writings last mentioned and the other documentary instrumentalities used in the fraud, and, in addition, became a voluntary grantee and grantor in the chain of conveyances, without consideration, which were employed to transfer the title to valuable realty, and which began with a deed from Morris M. Scher to his son, Jacob W. Scher, followed immediately by a deed from the son to Joseph W. Becker, and ended with a grant from this grantee to the son and his wife as tenants by the entireties. The first deed was promptly recorded, but the last two deeds were not put upon record until fifteen days after the death of Morris M. Scher, which was not quite a month after the date of their execution. It is averred that the delay was for the purpose of having the record title remain in that apparent state, in order to enable the parties to make such other disposition of the property conveyed as might subsequently be determined. The allegations of the bill show that the acts and documents in furtherance of the fraud charged were contemporaneous and inextricably combined.

A will executed by the husband some years before his marriage to the plaintiff was admitted to probate, and attempted to dispose of his entire estate, creating a trust of a part. The defendants in the bill of complaint are the grantees and grantors in the conveyances designed to effectuate the fraud against the widow; and the executors and trustees under the will of Morris M. Scher, who, in these capacities, represent all the other parties in interest, so that every one adversely concerned is united as a defendant. All the defendants demurred to the amended bill of complaint, and the chancellor overruled the demurrers, with the exception of that interposed by Joseph W. Becker. The plaintiff has appealed from the decree to the extent it sustained the demurrer of Becker. In sustaining this demurrer, the chancellor rested his decree on the erroneous conclusion that Becker was not a necessary party. The allegations of the bill of complaint have been sufficiently stated to show that Becker was not only a proper defendant but a necessary party to complete relief. The charges preferred are admitted

by his demurrer. He has, therefore, left the court no other alternative than the assumption that they are true. They reveal a gross fraud upon an ignorant, confiding, and purposely deceived woman. In the deceit practiced, he was a chief and informed participant. The result of his wrongful acts cannot be undone, and the record title restored to its proper condition, so as to have the marital rights of the widow attach to the property attempted to be conveyed in as merchantable state as at the time of the first wrongful and voluntary conveyance, unless the deeds to him, and from him to the tenants by the entirety, be stricken down and a reconveyance made by him, or, upon his default, by a trustee appointed for that purpose.

The surviving wife, who stands in the position of a purchaser for value (*Lynn v. Gephart,* 27 Md. 547, 569; *Shipley v. Mercantile Trust & Dep. Co.,* 102 Md. 649, 661, 62 A. 814; *Durham v. Rhodes,* 23 Md. 233, 242; *Matthews v. Targarona,* 104 Md. 442, 445, 65 A. 60; *Duttera v. Babylon,* 83 Md. 536, 544, 545, 35 A. 64; *Kuykendall v. Devecmon,* 78 Md. 537, 543, 28 A. 412), is on the allegations of the bill entitled to relief (*Collins v. Collins,* 98 Md. 473, 477-484, 57 A. 597; *Kline v. Kline,* 57 Pa. 120-123; *Graham v. Graham,* 143 N. Y. 573, 579-581, 38 N. E. 722; *Chandler v. Hollingsworth,* 3 Del. Ch. 99; *Perry on Trusts,* vol. 2 (7th Ed.), sec. 646, p. 1111; *Washburn on Real Property,* secs. 338, 391, 2228; *Tiffany on Real Property,* sec. 220, pp. 762-765; Annotations in 48 *L. R. A.* (N. S.) 512-523; *Pearre v. Grossnickle,* 139 Md. 1, 8, 114 A. 725; *Jaworski v. Wisniewski,* 149 Md. 109, 118-120, 131 A. 40), and, so, to her dower in the land, and to have it assigned and laid off, if she so elect and it be susceptible of division, without the incumbrance of a deed fraudulently made by grantor and grantee in order to defeat, by way of anticipation, her prospective inchoate right of dower therein. Code, art. 16, secs. 45-47; article 46, secs. 2, 4, 37; article 45, sec. 6; *Miller's Equity Proc.,* sec. 441, note 1; *Rickwood v. Smith,* 146 Md. 187, 190, 126 A. 79; *Walter v. Riehl,* 38 Md. 211, 216, 219; *Price v. Hobbs,* 47 Md. 359, 389.

As pointed out by *Calvert on Parties in Equity,* at page 24, an attorney charged with fraud on behalf of his client, on every principle of natural justice and equity, should be made a party, on the threefold ground that he has particular knowledge with respect to the subject-matter which he should discover in his answer; that no one can possibly represent him with reference to an accusation so personal to himself; and, finally and more decisively, that a person who has committed a fraud has in that regard a character peculiar to himself, in that he is subject to liabilities in respect of those losses which such conduct has tended to produce. *Ibid.,* pp. 80, 81, 231; *Story's Equity Pleading* (10th Ed. 1892), sec. 232, p. 226; *Story's Eq. Juris.* (14th Ed. 1918), vol. 3, sec. 1948, p. 531; *Beachey v. Heiple,* 130 Md. 683, 689-691, 101 A. 553.

In this particular transaction the grantee, when he became the grantor, also bound himself by covenants, against having created any incumbrance, of special warranty, and of further assurance.

This defendant elected to submit the question of the necessity for him to answer the accusations on an admission by demurrer of their truth. If the present admission be established by pleading or proof, a decree would be framed to remedy the wrong in which this defendant participated. So, should he have a defense, it must be presented by an answer, which will afford him a desirable opportunity to put his reply on the record. Whether or not he will be permitted to testify is a matter which is not now before the court for determination. Section 3 of article 35 of the Code (Evidence Act) is not a statute of total exclusion, and, if its enforcement would so result to the defendant's disadvantage, that would be no reason to create an exemption in his favor when the statute is intended to be of universal application to all parties within its scope. As an attorney at law the defendant was at once advised of the law and bound by the ethical obligations of his profession to a high degree of responsibility, and any embarrassment to his defense that may result from his wrongful

conduct is not a tolerable ground for a rule of law or equity to be relaxed in his favor.

Under the given circumstances, and for the reasons stated, this defendant was properly joined. *Lovejoy v. Irelan,* 17 Md. 525, 526; *Ward v. Hollins,* 14 Md. 158, 167; *Trego v. Skinner,* 42 Md. 426, 431-433; *Brian v. Thomas,* 63 Md. 476, 480, 481; *Ruhe v. Ruhe,* 113 Md. 595, 602, 603, 77 A. 797; *Sears v. Barker,* 155 Md. 323, 329, 330, 141 A. 908; *Phelps on Jurid. Equity,* sec. 24; *Miller's Equity Proc.,* secs. 55, 22, n. 9.

The case of *Dudley v. Hurst,* 67 Md. 44, 53, 8 A. 901, and similar decisions, are not in conflict with the conclusion here expressed, because those appeals relate to instances where no fraud was charged against the party to the grant, who was merely used as a conduit in the transfer of title. *Walter v. Riehl,* 38 Md. 211, 220, 221; *Bradford v. Harford Bank,* 145 Md. 653, 659, 660, 125 A. 719.

The primary object of the bill of complaint is to secure a widow in her marital rights in the estate of her dead husband. In the accomplishment of that single object, the defendants were properly joined, as, without their association in one cause, there would not be included the parties against whom the necessary equitable relief and auxiliary remedies could be granted and employed to obtain the full and complete justice to which the plaintiff on the allegations is entitled. Under these circumstances the objection of multifariousness will not lie against the bill at bar. *Trego v. Skinner,* 42 Md. 426, 431-433; *Brian v. Thomas,* 63 Md. 476, 480; *Canton v. McGraw,* 67 Md. 583, 590, 11 A. 287; *Beachey v. Heiple,* 130 Md. 683, 689-691, 101 A. 553.

The cause is now on demurrer, and, after answer and issue, the testimony may present various defenses. It is sufficient to say that these are not now presented nor intended to be limited by this opinion, which, on the admissions of the demurrer, requires a reversal.

> *Decree reversed in part, with costs of this appeal to be paid by the appellee; and cause remanded for a decree in conformity with this opinion.*